479 A.2d 553

**Joanne C. MAPP, Administratrix of the Estate of Naomi Mapp and Deborah Mapp**

**v.**

**Hal DUBE and Kitty Dube, his wife, Appellants.**

Superior Court of Pennsylvania.

Argued March 28, 1984.

Filed June 22, 1984.

Reargument Denied Aug. 16, 1984.

Paul A. Barrett, Scranton, for appellants.

Martin J. Meyer, Kingston, for appellee.

Before BROSKY, WIEAND and McEWEN, JJ.

McEWEN, Judge:

This case arose after an apartment building owned by the appellants was destroyed by fire resulting in the death of two women who were tenants in the building. Appellee instituted this action on behalf of the estates of the dead women and alleged that appellants were negligent in their failure to provide adequate means of escape from the building. After the jury returned a verdict in favor of both estates and the trial judge denied the appellants' Motions for a New Trial and for Judgment N.O.V., this appeal was commenced. Appellants present the following issues for our review:

(1) whether the trial court erred when it precluded appellants' expert witness from testifying as to the utility of

additional means of emergency egress from the apartment building owned by appellants.

(2) whether the trial court erred when it precluded appellant from cross-examining appellee's expert witness concerning the institution where one of the decedents obtained her Graduate Equivalency Diploma.

(3) whether the trial court was in error when it precluded evidence concerning the incendiary nature of the instant fire.

(4) whether the trial court erred when it permitted appellee's expert to testify as to employment opportunities for switchboard operators in northeastern Pennsylvania.

(5) whether the trial court erred when it permitted a tenant of the destroyed building to testify that he heard women screaming inside the burning building.

(6) whether the trial court erred when it excluded from evidence a letter from a building inspector concerning the premises here in question.

(7) whether the trial court was in error when it commented to the jury regarding the prejudicial nature of certain photographs.

The record demonstrates the painstaking effort of the distinguished President Judge Edwin M. Kosik to weigh carefully the difficult issues presented so as to insure a fair trial of this serious and complex case. While we reject as meritless, with but one exception, the assertions of appellant upon each of these issues, we are constrained to order a new trial by reason of our holding upon that one issue.

■ Appellants first contend that the trial court erred prejudicially when it prevented their expert witness from testifying as to whether any further means of emergency egress would have aided the decedents under the circumstances. We note initially:

Unless there is a substantial reason therefor, a new trial should not be granted in a negligence case... In an appeal from a jury trial, where the moving party alleges reversible error he must show not only the existence of the error, but also that the jury was misled by this error

to his detriment... It is only when improperly admitted evidence may have affected a verdict that a new trial will be the correct remedy. (citations omitted).

*Warren v. Mosites Construction Co.*, 253 Pa.Super. 395, 403, 385 A.2d 397, 401 (1978). *See also Anderson v. Hughes*, 417 Pa. 87, 208 A.2d 789 (1965); *Furey v. Thomas Jefferson University Hospital*, 325 Pa.Super. 212, 219–220, 472 A.2d 1083, 1087 (1984). The focus of our inquiry is, of course, the existence of prejudicial error, namely, error that may have affected the verdict of the jury and, therefore, whether the evidentiary error is one of admission or, as here, one of omission, is of no consequence.

The record reveals the following trial dialogue between counsel for appellee and a fire safety expert presented by appellee:

Q. Mr. Dove, the fact that there was, in your opinion, no approved means of egress from the front third floor apartment other than the staircase, is that correct?

A. That's correct.

Q. Can you—whether or not that circumstance in and of itself created a situation that exposed the occupants of the third floor front apartment to an unreasonable risk of harm or hazard in the event of a fire?

 \* \* \* \* \* \*

THE WITNESS: I have an opinion.

 \* \* \* \* \* \*

Q. Would you state it, please.

A. That it created a hazard to the occupants of the third floor front apartment.

Q. And would you explain why.

 \* \* \* \* \* \*

A. In a multiple occupancy dwelling, in any dwelling, but particularly a multiple occupancy dwelling, one must anticipate—and that's the purpose of preventive measures, particularly fire preventive measures—that a fire may occur. And should that fire occur particularly in the stairwell or common hallways of a multiple

occupancy dwelling, that a second independent safe means of egress must be provided so that those people living in that building can find refuge by way of that second means of egress. With the only means of egress for the third floor front being the open stairwell, in my opinion, created a hazard.

Q. *What, if anything, sir, could the owner of this building have done, or what devices, in your opinion could have been provided to the occupants of that particular apartment that would have alleviated the problem that you described?*

\* \* \* \* \* \*

A. There are a number of apparatus that could and should be used and are used in multiple occupancy dwellings. They would be smoke detectors, fire alarm systems, independent emergency lighting, metal or masonry or wood, as far as that is concerned, fire escapes affixed to the exterior of the building so that someone could get out of their window or out of their apartment and onto that ladder and make their way to safety. There are also apparatus which are recommended and are used extensively and they are known as collapsible ladders, generally of metal construction. They are affixed to the underside of a window in a specific apartment. In the event of an emergency, the occupant merely has to raise the window, drop the ladder out the window. It unfolds and they can then make their way to safety. They would not be subjected to making their way into a hallway where they may be trapped by the heat and fire. (emphasis added).

 Thus did appellee's expert opine that the probability of survival of the decedents would have been considerably enhanced had appellants provided alternate methods of egress for the decedents. The court did not, however, permit appellants to rebut this testimony since the trial judge refused to allow an expert witness of appellants, John Connell, to testify that such equipment would not have availed the decedents under the circumstances of the in-

stant fire. Appellants, therefore, were unable to refute highly damaging testimony upon the crucial issue of the trial, namely, the causation element of negligence. We believe that this ruling composes reversible error since it was to the detriment of appellants and, as well, may have affected the verdict.

 Nor are we persuaded to the contrary by the contention of appellee that this testimony was correctly excluded since it did not fall within the fair scope of the pretrial summary of appellants' expert testimony provided by appellee during discovery. Pennsylvania Rule of Civil Procedure 4003.5(c) states:

> **Rule 4003.5. Discovery of Expert Testimony. Trial Preparation Material**
>
> * * * * * *
>
> (c) To the extent that the facts known or opinions held by an expert have been developed in discovery proceedings under subdivision (a)(1) or (2) of this rule, his direct testimony at the trial may not be inconsistent with or go beyond the fair scope of his testimony in the discovery proceedings as set forth in his deposition, answer to an interrogatory, separate report, or supplement thereto. However, he shall not be prevented from testifying as to facts or opinions on matters on which he has not been interrogated in the discovery proceedings.

The answer of appellants to the pertinent interrogatory propounded by appellee described the anticipated testimony of their expert:

> John Connell will testify concerning the effect of the incendiary arson fire, the force of the fire, its effect on oxygen and surroundings and the hazards resulting from it *including the difficulty in preventing injuries and death to the plaintiff herein by use of alarms, etc.* (emphasis supplied).

We believe that the offered testimony of appellants' expert regarding the utility of additional means of emergency egress from the premises would not have been inconsistent

with nor beyond the fair scope of the foregoing answer to appellee's interrogatory. We are, therefore, constrained to order a new trial.

While our holding that a new trial is required effectively resolves this appeal, we, nonetheless, proceed to an expression of view upon the other issues raised by appellants so as to serve the court and counsel in the likely event that these questions again become issues in the retrial.

■ Appellants also argue that the trial court erred when it precluded cross-examination by appellant of appellee's expert vocational consultant, as to the institution where one of the decedents, Naomi Mapp, obtained her Graduate Equivalency Diploma. A trial court, however, may "properly exclude evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues or misleading the jury." *Daset Mining Corporation v. Industrial Fuels Corporation*, 326 Pa.Super. 14, 22, 473 A.2d 584, 588 (1984). The Graduate Equivalency Diploma in question was awarded to one of the decedents during her incarceration at a state correctional institute. The trial judge, therefore, was required to balance the probative value of this evidence as it related to the future value of the degree with the unfair prejudice which would have resulted had the jury learned of this decedent's prior criminal activity. We cannot fault the conclusion of the court that the prejudicial effect of such evidence far exceeded any probative value.

■ Another error asserted is the purported exclusion of evidence concerning the undisputed incendiary nature of the fire. The record discloses, however, that the origin of the fire was made clear to the jury by the trial judge at the very outset of the trial:

THE COURT: [to the jury] We might save a little time because in this side bar conference, it was determined that both counsel will agree that the fire in this case was of an incendiary nature and that the accelerant or the

cause of the fire was gasoline, and it will eliminate the necessity of procuring any opinion from this witness.[1] The learned trial judge did not err when he excluded additional evidence of this undisputed fact.[2]

We next consider the contention that the trial court was in error when it permitted appellee's vocational expert to testify as to employment opportunities for switchboard operators in northeastern Pennsylvania. We note, however, that the trial judge has broad discretion with regard to the admission of expert testimony. *Whistler Sportswear, Inc. v. Rullo,* 289 Pa.Super. 230, 433 A.2d 40 (1981). Appellees' expert testified that, based on his personal knowledge, opportunities for employment as a switchboard operator "commonly" occurred in northeastern Pennsylvania between 1976 and the time of trial. Although such testimony may not be admitted into evidence if based upon conjecture, *Hussey v. May Department Stores, Inc.,* 238 Pa.Super. 431, 357 A.2d 635 (1976), here, the witness, a "vocational consultant", specifically stated that his testimony was based upon his own personal knowledge. We, therefore, find no abuse of discretion on the part of the trial court in ruling such testimony admissible.

1. We note that, in addition to the announcement of this stipulation by the court, evidence concerning the incendiary nature of the fire was presented twice during the trial including this testimony by appellants' fire expert:

A. Well, during the course of going through the fire building and the debris, we uncovered a one-gallon plastic Texaco container that had at one time apparently contained antifreeze. The point at which this container was found was just inside the main entrance door at the foot of a flight of stairs which led up to the second floor. The debris in that area, down at the floor level, with the assistance of the Fire Department we were able to dig down to what had been the floor. We detected relatively strong odor of gasoline as well as having found the Texaco container and concluded that this fire was of incendiary origin and that it had been accelerated by the use of a flammable liquid, notably gasoline.

2. Appellant also contends that he was prevented by the trial judge from arguing that the deaths were caused by the unforesecable and superseding act of arson. We can find, however, no evidence in the record to support this claim.

■ Appellant also asserts that the trial court was in error when it permitted a tenant of the destroyed building to testify as a rebuttal witness that he heard women screaming from inside the burning building. The admission or rejection of rebuttal evidence is within the sound discretion of the trial judge. *Flowers v. Green,* 420 Pa. 481, 218 A.2d 219 (1966); *McNair v. Weikers,* 300 Pa.Super. 379, 446 A.2d 905 (1982); *Pittsburgh-Des Moines Steel Co. v. McLaughlin,* 77 Pa.Cmwlth. 565, 466 A.2d 1092 (1983). The record reveals the testimony of appellants' fire expert that, in all probability, the conditions inside the building at the time of the fire resulted in the instantaneous deaths of the women. Rebuttal testimony as to the possibility that the women might not have died immediately and, indeed, might have suffered prior to their demise, was certainly relevant to the issue of damages. We, therefore, can discern no abuse of discretion on the part of the trial court.

■ Appellant further argues that the trial court was in error when it excluded from evidence a letter written by a building inspector concerning the building wherein the decedents perished. The Uniform Business Records as Evidence Act, 42 Pa.C.S. § 6108, states:

### § 6108. Business records

\* \* \* \* \* \*

**(b) General Rule.**—A record of an act, condition or event shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business at or near the time of the act, condition or event, and if, in the opinion of the tribunal, the sources of information, method and time of preparation were such as to justify its admission.

\* \* \* \* \* \*

42 Pa.C.S. § 6108(b). The proposed letter did not, however, achieve the status of competent evidence since appellant did not comply with the conditions precedent that testimony be presented as to (1) the mode of preparation of the letter and

(2) the writer's sources of information.[3] Therefore, the ruling of the trial judge was proper.

The final assertion of appellant arises from the effort of appellee to have certain photographs of the charred bodies admitted into evidence. While the court sustained the timely objection of counsel for appellant that the photographs were inflammatory, appellant urges that the extended explanation of the ruling delivered to the jury by the court was in itself prejudicial. We need not discuss, however, whether the ruling might have been better expressed in general, terse fashion, nor address the question of whether the explanation effected such prejudice as to compose reversible error. Rather, since the record does not reflect any expression of objection at the time the explanation was offered by the court, the issue must be considered waived. *Whistler Sportswear, Inc., supra.*

Judgment vacated. Case remanded for a new trial. Jurisdiction relinquished.

---

**3.** Nor did the letter indicate to whom the letter was sent.