585 A.2d 1004

**Price L. ROGERS and Elaine Rogers,**

**v.**

**JOHNSON & JOHNSON PRODUCTS, INCORPORATED and Lankenau Hospital and Thomas Jefferson University Hospital.**

**Appeal of JOHNSON & JOHNSON PRODUCTS, INC.**

Superior Court of Pennsylvania.

Argued Feb. 11, 1987.

Filed Dec. 4, 1990.

Reargument Denied Feb. 15, 1991.

Alan K. Cotler, Philadelphia, for appellants.

Jim Beasley, Philadelphia, for Rogers, appellees.

Before CIRILLO, President Judge, and BECK and HESTER, JJ.

HESTER, Judge:

Johnson & Johnson Products, Inc., appeals from the April 2, 1986 judgment entered by the Court of Common Pleas of Philadelphia County following a jury trial. The jury awarded appellees, Elaine and Price Rogers, damages in the amount of $225,000, to which the court added Pa.R.C.P. 238 delay damages. Appellees instituted this suit to recover for injuries sustained by Price Rogers when a plaster of paris splint manufactured by appellant allegedly malfunctioned and caused a severe burn. We previously filed an opinion reversing this judgment, *Rogers v. Johnson & Johnson Products, Inc.*, 368 Pa.Super. 109, 533 A.2d 739 (1987),

holding that a product malfunction theory and a negligence theory were mutually exclusive and that both theories could not be argued to the jury. The supreme court reversed our decision in *Rogers v. Johnson & Johnson Products, Inc.*, 523 Pa. 176, 565 A.2d 751 (1989). Accordingly, we now address the issues remaining in this appeal following remand by our supreme court. We affirm in part, reverse in part, and remand.

Our careful review of the record reveals the following. On Sunday, May 1, 1977, appellee Price Rogers twisted and fractured his leg. His wife, Elaine Rogers, telephoned Dr. John Dowling, M.D., the chief orthopedic surgeon at Lankenau Hospital in the Germantown section of suburban Philadelphia. Dr. Dowling referred them to the Lankenau Hospital emergency room where a third-year resident, Dr. Lawrence Naame, was on duty. Dr. Naame concluded the fracture was severe, and consulted with Dr. Dowling by telephone. Dr. Dowling arrived shortly thereafter and recommended temporarily setting the fractured leg with a splint until he could perform an open reduction the following morning. The fracture was near an artery, requiring the doctors to avoid any risk of puncture. Dr. Dowling administered a pain killing drug and directed Dr. Naame to prepare a plaster of paris cast for the splint. Dr. Naame prepared the cast out of sight in a room adjoining the emergency room that had a sink, and then he and Dr. Dowling placed the splint on the leg. Dr. Naame then left the emergency room while Dr. Dowling held the splint to allow the plaster of paris to cool and set. Dr. Dowling then allowed the splint to rest on the bed while he proceeded to the hospital administration office to admit Mr. Rogers for surgery the following day.

Before Dr. Dowling left the emergency room, Mr. Rogers complained to him about heat from the splint. Dr. Dowling responded that this was normal. Later, after Dr. Dowling left, appellee Price Rogers complained to his wife that the splint was burning him and causing great pain. She left to locate Dr. Dowling and accompanied him back to the emer-

gency room. Dr. Dowling did not remove the splint since he did not consider the situation abnormal and because removing the splint might endanger the leg artery. The following day during the operation, Dr. Dowling discovered second and third degree burns on Price Rogers' leg. Although able to undergo the open reduction surgery, Mr. Rogers experienced a longer, more painful recuperative period, requiring a skin graft, therapy, and home nursing for several months.

Appellees filed suit against Johnson and Johnson alleging that its fast-setting plaster of paris ("the product") malfunctioned thereby causing the burns, or alternatively, that appellant was negligent in not testing the product sufficiently, not monitoring complaints, and failing to give adequate warning that the product could cause severe burns. Appellees also filed suit against Lankenau Hospital and Thomas Jefferson University Hospital, with whom Dr. Naame was in a residency program and on rotation to Lankenau Hospital, alleging that either or both hospitals were negligent in supervising the physicians' performance. Appellees did not file suit against Dr. Naame or Dr. Dowling. Instead, they attempted to establish that the physicians were not negligent in order to eliminate secondary causes as part of their malfunction theory in their case-in-chief against appellant. Appellant thus was compelled to contest appellees' evidence eliminating the existence of secondary causes for the burn in order to refute the malfunction theory when, at the same time, the co-defendant hospitals also denied physician negligence. Appellant attempted to join the physicians as third party defendants long after the complaint was filed, but joinder was denied on the basis that appellees would be prejudiced in preparing their case for trial by the additional delay, especially since extensive discovery had been completed.

At trial, Johnson and Johnson contended that it was impermissible to plead both a malfunction theory and a negligence theory in the alternative as a factual matter in the same case. The trial court determined that a party is

not required to negate secondary causes prior to arguing a malfunction theory to the jury. Instead, the court concluded it is necessary only to produce evidence which if believed by the jury would negate secondary causes.

At trial, appellant asserted that physician negligence was the cause of the burns. Appellant contended that many external factors, such as the temperature of the water and the thickness of the material used, readily could cause excessive exothermic (heat) build-up in plaster of paris and that all those factors were under the exclusive control of the physicians. The jury rejected all allegations of physician negligence and awarded damages against Johnson and Johnson. Judgment was entered and Johnson & Johnson appealed. On appeal we reversed and held that secondary causes must be excluded as a legal cause prior to the jury considering a malfunction theory. *Rogers v. Johnson & Johnson*, 368 Pa.Super. 109, 533 A.2d 739 (1987). As noted, *supra*, the supreme court reversed our holding on this issue and remanded for consideration of the remaining issues in the appeal. *Rogers v. Johnson & Johnson*, 523 Pa. 176, 565 A.2d 751 (1989).

Appellant now asserts that other instances of trial court error entitle it to a new trial. First, it argues that the trial court erred in admitting into evidence reports of other burn incidents involving a similar, but different, Johnson & Johnson product. Second, appellant argues that appellees improperly were permitted to cross-examine its medical expert regarding competitors' products because this was outside the scope of his direct testimony when, at the same time, the trial court precluded appellant from offering related evidence from its own expert in rebuttal. Third, appellant asserts that the trial court's charge was erroneous, contradictory, and confusing. Finally, appellant contends the trial court erred in awarding and calculating Pa.R.C.P. 238 delay damages.

Appellant first argues that the court erred in admitting the report which concerned a dissimilar product that caused injuries which never were established to have oc-

curred under the same or similar circumstances to those circumstances surrounding appellee's injury. In support, it cites *Majdic v. Cincinnati Machine Co.*, 370 Pa.Super. 611, 537 A.2d 334 (1988) (en banc). Appellant further contends that appellee repeatedly referred to the report to support an inference regarding the ultimate issue in this case to the effect that the fast-setting plaster of paris malfunctioned thereby causing appellee's second and third degree burns. Appellant argues that it was prejudiced by the admission of the report and the repeated references to it by appellee for other purposes. Thus, appellant concludes that the relevancy of this report was doubtful, and its prejudicial effect far outweighed its usefulness. *See Whitman v. Riddell*, 324 Pa.Super. 177, 471 A.2d 521 (1984) (admission of evidence is reversible where admission is erroneous and harmful or prejudicial).

It has long been clear that questions regarding the admissibility or exclusion of evidence are within the sound discretion of the trial court and will not be disturbed absent an abuse of discretion. An abuse of discretion requires prejudice, partiality, bias, ill-will, or misapplication of law. *Meyers v. Nicholas Homeshield*, 384 Pa.Super. 1, 557 A.2d 743 (1989); *Kepple v. Fairman Drilling Co.*, 380 Pa.Super. 52, 551 A.2d 226 (1988). Instantly, ample support exists in the record for the trial court's decision to admit this report for the limited purpose of demonstrating notice. The report which concerned the Johnson & Johnson extra fast-setting plaster of paris that caused the burns in Texas ("the Texas report"), and the Johnson & Johnson fast-setting plaster of paris which allegedly caused injury to appellee, established that both products were packaged and/or shipped on the same day from the same factory.

While testimony revealed that the products were not from the same production batch and the circumstances surrounding the Texas injuries may not have been identical to those concerning appellee, we find that the trial court reasonably could conclude that the similarities outweighed the differences for the purpose of establishing whether Johnson &

Johnson had notice of malfunctions. The production batches were made sequentially and included many of the same raw materials. Further, we note that the trial court excluded numerous other reports of burns that did not involve cold water or share the same package/shipping number. In our view, the trial court's decision is strictly a matter of judgment. Accordingly, we do not find an abuse of discretion or reversible error by the trial court in admitting the report.

■ Appellant next contends that appellees and the hospital co-defendants, whose interests were opposed to appellant's interests, used the Texas report not only for establishing notice but as substantive evidence in their closing arguments. Initially, we note that the trial court gave the standard jury instruction that arguments by attorneys do not constitute evidence. Furthermore, appellant failed to object during or after the final arguments at trial; consequently, this argument is waived.

Next, appellant argues that the trial court not only permitted appellees to exceed the scope of appellant's direct examination of its expert but also denied appellant the opportunity to offer corresponding evidence in rebuttal from its expert. Appellant argues that as a result, the jury learned only that a competitor's product, "OCL," existed and had a greater thickness than the splint applied to appellee, without learning that "OCL" also had an insulating layer as a safety feature to prevent exothermic heat build-up that Johnson & Johnson's product did not possess. Appellant now claims that the combined result of these rulings prejudiced it. In support, appellant relies on cases in which cross-examination exceeded direct examination, yet rebuttal testimony was not allowed. *Woodland v. Philadelphia Transportation Co.*, 428 Pa. 379, 238 A.2d 593 (1968); *Leaphart v. Whiting Corp.*, 387 Pa.Super. 253, 564 A.2d 165 (1989); *Mapp v. Dube,* 330 Pa.Super. 284, 479 A.2d 553 (1984).

The record reveals that appellees impeached Dr. Ronald Greene concerning the accuracy of his knowledge regarding

the thickness of three or four competing products, including "OCL," after he admitted that he was familiar with similar competing products and named several of them. The trial court permitted this inquiry over appellant's immediate objection that this was not relevant and exceeded direct examination, in order to test Dr. Greene's credibility. Appellant later sought to have its product manager, John Hull, testify regarding the thickness of "OCL" in order to explore its corresponding safety feature. The trial court sustained appellees' objection to the relevancy of Mr. Hull's initial testimony on the thickness of "OCL" because the thickness of the product used on appellee was not at issue. Rather than explore that it did not manufacture a product with similar thickness as "OCL" for safety reasons, *which the court suggested would be permitted,* Johnson & Johnson concluded its direct examination of Mr. Hull after appellees' objection on relevancy was sustained.

■ Appellant never argued to the trial court that it was prejudiced by its rulings. Thus, that claim is waived and we will not address it. *Dilliplaine v. Lehigh Valley Trust. Co.,* 457 Pa. 255, 322 A.2d 114 (1974) (concept of "fundamental" trial error abandoned in favor of preservation of error through specific and timely objection.) Furthermore, admission or exclusion of rebuttal testimony is within the sound discretion of the trial court. *Mapp v. Dube, supra.*

■ Appellant next argues that the trial court's charge to the jury was inconsistent, erroneous, and confusing. Specifically, appellant asserts that the court stated to the jury that in asserting their defense, Johnson & Johnson had the burden of proving their claim that physician negligence was the cause of appellee's injury. Appellant correctly argues that the burden of eliminating secondary causes in establishing a malfunction without a specific defect is a burden of the injured party and not of the defendant. We note, however, that appellant did not specifically object on this basis to the court's charge. Accordingly, this claim is waived. Pa.R.A.P. 302. *Broxie v. Household Finance Co.,*

472 Pa. 373, 372 A.2d 741 (1977); *Dilliplaine v. Lehigh Valley Trust Co., supra.*

■ Appellant next contends that the award of Rule 238 delay damages with respect to Mrs. Rogers' claim based solely on loss of consortium is improper. Appellant asserts that since she did not suffer direct "bodily injury, death or property damage" as required by the rule, and her claim purely is derivative of Price Rogers' injuries, her claim is inappropriate for an award of delay damages.

This argument recently was rejected on the basis that loss of consortium is a separate and distinct claim to which Rule 238 delay damages attach. *See Novelli v. Johns Manville*, 395 Pa.Super. 144, 151–152, 576 A.2d 1085, 1089 (1990), where we stated:

> In light of the derivative nature of the action for loss of consortium, we are satisfied that loss of consortium is part of the total compensable damages arising from the decedent's bodily injuries, and we hold that loss of consortium is part of "what was owed" under *Craig [v. Magee Memorial Rehab. Ctr.*, 512 Pa. 60, 515 A.2d 1350 (1986) ].

> We find further support for this conclusion by noting that not to allow delay damages for loss of consortium awards would undermine the purpose of Rule 238. As noted above, Rule 238 is designed to encourage responsible approaches to these cases and prevent unreasonable refusals to pay what is owed for tortious injury. Here, Celotex's refusal to settle delayed compensation to Novelli for both the decedent's claim and her loss of consortium. We see no reason to let Celotex benefit from this delay.

> In summary, we hold that, because loss of consortium is part of the total compensable damages related to the decedent's injuries, Rule 238 delay damages may be assessed on awards for loss of consortium. *Accord Hughes v. GAF Corp.*, 364 Pa.Super. 311 [528 A.2d 173] (1987) (delay damage award based on molded verdict which included award for loss of consortium).

■ Finally, appellant argues that since it consistently disputed the amount of delay damages (although not their imposition), the issue of delay damages is still pending. Accordingly, appellant contends that delay damages have yet to be determined fully. *Miller v. Wise Business Forms, Inc.*, 381 Pa.Super. 236, 553 A.2d 443 (1989) (en banc); *accord Staats v. Noll*, 381 Pa.Super. 162, 553 A.2d 85 (1989) (en banc); *Mathis v. United Engineers & Contractors, Inc.*, 381 Pa.Super. 466, 554 A.2d 96 (1989). "Because the issue of delay damages was pending before the trial court on the date revised Rule 238 was promulgated, it is clear that any such award in the instant case was properly determinable only under the revised rule." *Jistarri v. Fentress*, 390 Pa.Super. 209, 212–13, 568 A.2d 618, 620 (1989) (citations omitted). We agree. A hearing clearly is mandated by the revised rule.

Judgment affirmed in part and reversed in part; case remanded for a determination and calculation of delay damages. Jurisdiction relinquished.

BECK, J., files a dissenting opinion.

BECK, Judge, dissenting.

I dissent. I would reverse the judgment and remand the case for a new trial on the ground that the trial court erred in admitting evidence of other burn incidents allegedly caused by Johnson & Johnson plaster of Paris products.

The specific factual background pertinent to this issue is as follows. At the close of appellees' case, counsel for appellees sought to admit evidence consisting of a written report prepared by a Johnson & Johnson salesman. The report, which is referred to throughout the record as the "Texas report," consisted of information written by the salesman on a Johnson & Johnson complaint form. The information on the form was provided to the salesman by a nurse at a hospital in Texas. The nurse apparently told the salesman that on three occasions, Johnson & Johnson plaster of Paris splints had caused burns to patients of the

hospital. The nurse also apparently stated that in two of the cases, the plaster of Paris had been dipped in cold water before applying it. The report contained no other information as to the circumstances of the burn incidents reported. The thickness of the splints applied to the patients, the limb to which they were applied or the manner of air circulation around the splints during the drying process were not stated. Other evidence produced at trial indicated that all of these factors might be relevant to the degree to which the plaster of Paris would heat up during the process of drying into a hardened form.

However, the report did contain certain other relevant information. The report indicated that the plaster of Paris used in Texas was *extra-fast* setting plaster of Paris. The product that was used in the splint applied to Mr. Rogers was simply *fast* setting plaster of Paris. The report also indicated that the plaster of Paris used in Texas bore the Johnson & Johnson code number 3296N219R. The relevance of this number is that the plaster of Paris code number on the material that burned Mr. Rogers was 3296N355. The first 4 digits and the letter N are the same. The first four digits mean that the products were packaged and or shipped by Johnson & Johnson on March 29, 1976. The "N" indicates that they were shipped from Johnson & Johnson's New Brunswick plant. The last digits are the batch number of the product. Plaster of Paris is apparently manufactured by mixing various chemicals in large batches and then applying the wet plaster of Paris material to thin bandage material which is rolled up, packaged and shipped. Thus, the batch number indicates the chemical mixture from which this product was ultimately manufactured.

When counsel for appellees sought to admit this report, counsel for appellant strongly objected. He argued that it had not been demonstrated that the product involved in or the circumstances surrounding the Texas incidents were sufficiently similar to the instant case. Therefore, the probative value of the Texas report was far less than its potential for confusing and prejudicing the jury. The trial

court nevertheless admitted the report, with the following instructions to the jury:

> The sole purpose of reading that complaint [the Texas report] to you is for you to use as to whether or not Johnson & Johnson had knowledge that certain reactions did result from a shipment of Johnson & Johnson products made on the same day as the shipment in this case, if the code that will be read to you means what it's supposed to mean, what it has been testified it means. Now, if that is not accurate, you will hear more testimony on it. But the sole purpose is for you to determine from it whether or not Johnson & Johnson had been notified, was on notice that this particular shipment had caused problems somewhere else. And it goes to the issue whether or not the methods used by Johnson & Johnson to keep track of any possible complaint that may arise was a method which is a carefully drawn one and not a negligently drawn one.

> When I say this is the purpose you can use it for, it means for no other purpose, which means you cannot use this incident somewhere else about this other incident from this shipment on the same date, which doesn't necessarily mean the same package, or same batch, or same group of material was shipped the same day. If the testimony was heard, it means what we heard. That is not evidence you can use to determine there was any defect in the product here in this particular case.

Despite this instruction, however, the report was ultimately used by counsel for appellees as evidence of a defect. An enlargement of the report with the code numbers highlighted was circulated to the jury and counsel for appellees repeatedly referred to it in closing arguments. These references were not confined to statements concerning the relevance of the report to the notice issue. Rather counsel argued that the report was proof of the inconsistent nature of plaster of Paris concerning its tendency to heat up, which was the central allegation of defect in this case. The argument also stressed the similarity of the code dates on

the two products.[1]  The same arguments are repeated in appellees' brief to this court.

Under these circumstances, it is apparent that all of the requirements for the grant of a new trial because of an improper evidentiary ruling are present.  The admission of the evidence was erroneous and its admission was harmful to the appellant.  *See Whitman v. Riddell*, 324 Pa.Super. 177, 471 A.2d 521 (1984).

Evidence like that involved herein is commonly referred to as evidence of similar accidents or occurrences.  As the en banc panel in *Madjic v. Cincinnati Machine Company*, 370 Pa.Super. 611, 537 A.2d 334, 341, *allocatur denied*, 520 Pa. 594, 552 A.2d 249 (1988), recently reiterated, the admissibility of such evidence is limited.  Such evidence may often confuse the jury and the true issues before it by turning the jury's attention to collateral matters, i.e., the allegedly similar accidents and the circumstances under which they occurred.

When such evidence is proffered, the burden is on the proponent thereof to demonstrate that the evidence is "... comprised of similar accidents occurring at substantially the same place and under the same or similar circumstances." *Id.*, 370 Pa.Superior Ct. at 625, 537 A.2d at 341.  Moreover, even where such evidence is admitted with a limiting instruction as to its use, the admission may nevertheless be regarded as reversible error.  *See Whitman v. Riddell, supra.*

1.  The majority states that appellant never objected to the use of the Texas report by counsel for appellees in his closing arguments and that this objection is, therefore, waived.  I strongly disagree.  Appellant preserved its objection to the admission of this evidence throughout the trial, arguing its objection at every opportunity and reiterating it in post-trial motions.  To suggest that it was waived because not raised again in response to closing arguments is untenable.  Appellant had already objected to the evidence and the trial court was clearly informed of appellant's position on the issue.  In any event, appellant makes a point of the use of the Texas report in appellees' counsel's closing argument only to indicate how prejudicial the admission of the report actually was in the context of this trial.  The error alleged was the admission of the evidence by the trial court, not the use of it by appellees' counsel, and appellant's objection to this error was fully preserved.

As appellant persuasively argues, the limits on the admissibility of evidence of similar accidents are equally applicable in a malfunction theory case such as that at bar. *Uitts v. General Motors Corp.*, 411 F.Supp. 1380 (E.D.Pa.1974), *aff'd mem.*, 513 F.2d 626 (3d Cir.1975). In *Uitts*, plaintiffs proceeded under the malfunction theory to establish a defect in a car manufactured by defendant. They attempted to introduce evidence of records of complaints to defendant concerning other accidents involving identical or substantially similar vehicles. The court noted the general rule that such evidence is not easily admitted because of its potential for prejudice and confusion of the jury. The court excluded the evidence of prior complaints, stating:

> If plaintiffs were attempting to prove the existence of a specific defect or malfunction it is clear that the admission into evidence of the occurrence of similar accidents would require a showing that those accidents were caused by the same malfunction or defect. Simply because plaintiffs are proceeding under the *MacDougall* [malfunction] theory we do not believe they can introduce evidence of accidents which may involve a variety of causes, and then let the jury guess which of those causes was responsible for the accident in the present case.

*Id.* at 1383.

Clearly, appellees did not demonstrate a sufficient similarity between the incidents reported in the Texas report and the incident at issue in this case to warrant admission of the Texas report. First, the Texas report did not involve the application of the same type of plaster of Paris as was applied to Mr. Rogers. Second, the report did not reveal all of the circumstances of the reported incidents which might be pertinent to whether the plaster of Paris used in Texas had actually malfunctioned or, in fact, had simply overheated because of improper use or other secondary causes. Lastly, the potential for prejudice and confusion of the jury posed by this report was indeed large.

Although the report was admitted with a limiting instruction, it was not presented to the jury in that light. Indeed,

the report was not even necessary or probative as to the issues for which it was admitted, i.e., notice or ability to recall or trace. Johnson & Johnson had already admitted that it was aware of prior complaints of burning incidents resulting from plaster of Paris. Thus, there was no need for such potentially prejudicial evidence to be admitted concerning notice.

Moreover, the report was not relevant to the issue of whether Johnson & Johnson had notice of a problem with the product involved here or should have recalled or traced it. The Texas report involved extra fast setting plaster of Paris, a different product than that involved herein. Thus, if it put Johnson & Johnson on notice of anything, or if it imposed on Johnson & Johnson any post-sale duties, such related to a different product. Finally, it is difficult to see how the mere existence of a prior complaint goes to prove anything concerning whether Johnson & Johnson could have traced and/or recalled a defective product.

Furthermore, even with the limiting instruction and assuming that the report was probative and non-cumulative as to notice or post-sale duties, the clear possibility that the jury's attention would be diverted by the report outweighs the value of the report. The jury might well have focused on the Texas report and the similarity between the code numbers it bore and the numbers on the product used on Mr. Rogers. The jury could easily have regarded this report as evidence of otherwise inexplicable "malfunctions" of Johnson & Johnson plaster of Paris, which would reinforce appellees' theory that Mr. Rogers' burns were also caused by such a malfunction and, therefore, by a presumably defective product. The jury should not have been presented with this option as the Texas report was not probative of anything regarding malfunctions of fast setting plaster of Paris under the circumstances involved in this case. Avoidance of this potential misuse of evidence of similar accidents and this type of diversion of the jury's attention is precisely the rationale that underlies the limits on the admission of such evidence. These risks were clear-

ly present in this case and clearly outweighed the probative value of the Texas report, which was never established.

Since I find this error controlling, I would not address the remaining issues raised on appeal. I would find that the judgment against Johnson & Johnson should be reversed and the case remanded for a new trial.