Eugene MITCHELL and Yvonne
Mitchell, H/W

v.

GRAVELY INTERNATIONAL, INC.,
and Niemeyer Corporation.

Appeal of Eugene MITCHELL.

Superior Court of Pennsylvania.

Argued Jan. 15, 1997.

Filed July 29, 1997.

Michael W. McCarrin, Media, for appellant.

Harvey E. Little and Gerard Cedrone, Philadelphia, for appellees.

Before DEL SOLE, POPOVICH and OLSZEWSKI, JJ.

OLSZEWSKI, Judge.

Appellant Eugene Mitchell appeals from the trial court's December 27, 1995, order which vacated a $532,000 jury verdict entered in his favor and granted a new trial to appellees, Gravely International, Inc. (Gravely) and Niemeyer Corporation (Niemeyer). We reverse.

This matter originates from Mitchell's October 31, 1991, grievous fall from a mowing tractor manufactured by Gravely and owned, distributed and supplied by Niemeyer. Mitchell was operating the machine during the course of his employment with the Convent of Our Lady of Angels (the convent), to whom Niemeyer had supplied the mower for a sales demonstration. At the time of the accident, Mitchell had just washed the machine and was driving along a paved road leading to the convent's garage. Mitchell testified at trial that the mower suddenly accelerated and struck the curb, hurling him from the driver's seat. Most unfortunately, appellant sustained serious bodily injuries as a result of the accident, including broken facial bones and a permanent loss of cognitive abilities. Subsequently, Mitchell filed an action based upon strict products liability against Gravely and Niemeyer plus a negligence claim against Niemeyer, alone, for failing to properly maintain the mower. Following a trial on the matter, a jury found against both defendants. The defendants filed post-trial motions demanding a new trial. Said motions were granted by order of the trial court dated December 27, 1995, and this appeal follows.

At the outset, we note that the decision whether to order a new trial is one that lies within the discretion of the trial court. *Coker v. S.M. Flickinger Co.*, 533 Pa. 441, 625 A.2d 1181 (1993). Moreover, unless the trial court grossly abuses its discretion or commits an error of law, its determination must stand. *Id.* Instantly, the trial court based its decision to grant a new trial upon its determinations that it had erred in: (1) allowing Mitchell to call Sister Mary Regis, an elderly nun at the convent, to testify in rebuttal to defense experts' opinions, and (2) accepting the jury's verdict even though the jury twice acted in violation of the trial

**620**

court's charges. We find that the trial court committed errors of law and grossly abused its discretion in reaching both of the above conclusions. Accordingly, we reverse the December 27th order.

First, the trial court determined that Sister Regis's testimony was improper for rebuttal and, as such, that it had erred in allowing the nun to testify. We disagree. "[T]he admission or rejection of rebuttal evidence is within the sound discretion of the trial judge." *Neal by Neal v. Lu,* 365 Pa.Super. 464, 530 A.2d 103, 110 (1987) (quotation omitted). Moreover, our Supreme Court has stated that "[r]ebuttal is proper where facts discrediting the proponent['s] witnesses have been offered." *Flowers v. Green,* 420 Pa. 481, 218 A.2d 219, 220 (1966) (quoting *Schoen v. Elsasser,* 315 Pa. 65, 66, 172 A. 301, 302 (1934)). Instantly, Sister Regis's testimony was limited to facts which discredited appellees' witnesses.

First, she stated that she observed Eugene Mitchell's blood on the curb and ground on the right side of the convent's driveway. N.T., 9/12/95 at 22. She did not see any blood on the left side of the driveway. *Id.* These facts clearly discredit Hugh Grow, appellees' expert in agricultural engineering and accident reconstruction, whose testimony shed doubt upon the manner in which Mitchell's injury occurred. Specifically, Grow stated:

> If the machine struck the right curb, then I think the operator stayed on that point sufficient to keep the seat switch activated until the machine had, at least in part if not totally, climbed the left curb.

> \* \* \* \* \* \*

> My opinion would be that he had to be on the machine at least until it partly if not totally climbed the left curb.

N.T., 9/8/95 at 13, 16. Sister Regis's testimony, that she only saw blood on the right side of the driveway, clearly discredits Grow's

version of how the accident occurred and was, therefore, proper rebuttal evidence. *See Schoen, supra.*[1]

Sister Regis also testified that, on a prior occasion, she had witnessed Mitchell's co-worker, Jim Kimmery, driving the mower. During that incident, she had been working in the convent's yard when she heard the screeching of the mower's tires. N.T., 9/12/95 at 24. Alarmed by the noise, she turned and saw Kimmery turn quickly into the driveway with fear on his face. *Id.* at 24–25. Once the vehicle stopped, Sister Regis heard Kimmery exclaim, "I thought I'd never get it stopped." *Id.* at 28. These facts discredit the testimony of Dr. Clyde C. Richard, an expert in mechanical engineering, human factors, and accident reconstruction presented by appellees. Dr. Richard testified that he did not consider the incident involving Kimmery to be similar to the one involving Mitchell. N.T., 9/11/95 at 45. Accordingly, the facts presented by Sister Regis, which tend to show the similarity of the two incidents, clearly discredit Dr. Richard's testimony and, thus, were entirely proper as rebuttal evidence. *See Schoen, supra.*

Appellees make much of the fact that Sister Regis's testimony served to rebut opinions rather than facts. Since Sister Regis, herself, was limited to testifying about facts, appellees' argument is not persuasive. Our decision in *Mapp v. Dube,* 330 Pa.Super. 284, 479 A.2d 553 (1984), is instructive on this matter. *Mapp* involved a lawsuit filed by the estates of two women consumed in a fire against the owners of the apartment building where the women perished. On appeal, the building owners alleged that the trial court erred in allowing "a tenant of the destroyed building to testify as a rebuttal witness that she heard women screaming from the inside of the burning building." *Id.* at 294, 479 A.2d at 557. This Court resolved the matter by reasoning:

> The record reveals the testimony of [the owners'] fire expert that, in all probability,

---

1. Exactly where appellant fell from the vehicle is important. Appellant claimed that he fell on the right side of the driveway. This fact tends to establish that the deadman's switch malfunctioned because the mower continued across the road, over the left curb and down an incline into

the woods. Appellees claimed that appellant fell after the mower cleared the left curb. This fact tends to establish that the deadman's switch functioned properly and the mower merely rolled into the woods.

the conditions inside the building at the time of the fire resulted in the instantaneous deaths of the women. Rebuttal testimony as to the possibility that the women might not have died immediately and, indeed, might have suffered prior to their demise, was certainly relevant to the issue of damages. We therefore, can discern no abuse of discretion on the part of the trial court.

*Id.,* 479 A.2d at 558. Accordingly, it is entirely proper for a rebuttal witness to testify about facts which discredit an opponent's witness's opinions. *Id.* Accordingly, Sister Regis's testimony may not be attacked in this regard.[2]

 Were we to conclude that Sister Regis's testimony should have been presented during appellant's case in chief, however, we would still be compelled to find that the trial court was not warranted in granting a new trial on the matter. Our Supreme Court has held:

> It is, of course, true that as a general rule a plaintiff cannot claim as a right to give as evidence in rebuttal that which he might have given in chief. However, it is equally true that it is within the discretion of the trial court to permit evidence, in rebuttal, which should have been given in chief, provided only that the action of the trial court in this regard is not arbitrary or capricious.

*Potochnik v. Pittsburgh Railways Co.,* 379 Pa. 154, 108 A.2d 733, 739 (1954) (affirming on trial court opinion) (citations omitted). As illustrated above, Sister Regis's testimony served to discredit the testimony of two of appellees' expert witnesses. Accordingly, it cannot be said that the trial court acted arbitrarily or capriciously in allowing Sister Regis to take the stand. *See id. See also Remy v. Michael D's Carpet Outlets,* 391 Pa.Super. 436, 442–44, 571 A.2d 446, 450 (1990) ("The rebuttal testimony was offered to discredit [appellant's] expert witnesses, and although it was at times repetitive of

prior testimony given by the same witness [in appellee's case in chief], there is therein no basis for awarding a new trial."), *aff'd,* 536 Pa. 1, 637 A.2d 603 (1993).

 We also note that appellees make much of the fact that Sister Regis positively identified the substance she observed on the pathway as blood. Appellees correctly note that "such testimony should be cast in the form of **appearances** rather than certainties since 'only the expert is allowed to testify positively that the stain in question is blood.'" Appellees' brief at 13 (quoting *Commonwealth v. Schroth,* 479 Pa. 485, 388 A.2d 1034 (1978)). While appellees persuasively argue this point on appeal, our review of the record, nevertheless, reveals that Sister Regis's testimony was never objected to on this basis at trial. Accordingly, we remind appellees of the well established axiom that "[a] party complaining on appeal of the admission of evidence objected to in the court below will be limited to the specific objection made at trial." *Risbon v. Cottom,* 387 Pa. 155, , 127 A.2d 101, 103 (1956) (quotation omitted). *See Takes v. Metropolitan Edison Company,* —— Pa. ——, 695 A.2d 397 (1997); *Aiello v. Southeastern Pa. Transp. Auth.,* Pa.Cmwlth., 687 A.2d 399, 403 (1996).

The trial court also granted the new trial on the basis that the jury was "confused" concerning how to properly fill out the damages portion of the verdict slips. Ultimately, this confusion resulted in the trial court molding the verdict concerning damages. The underlying facts are best explained in the trial court's own words:

> At the end of trial, the Court provided two verdict slips to the jury: one for determination of product liability by Gravely and the other for determination of negligence by Niemeyer. Each of these slips had a space for the computation of damages. The Court gave the jury the following instruction regarding the verdict slips:

---

**2.** We note that appellees also strongly argue that Sister Regis should have been prohibited from testifying because she was an improper "surprise witness." Having found that Sister Regis's testimony was properly offered in rebuttal, however, we cannot conclude that the surprise to appellees

by her appearance warrants a new trial. *See Clark v. Hoerner,* 362 Pa.Super. 588, 599, 525 A.2d 377, 382 (1987) ("The [discovery] rules must be interpreted to prevent surprise and unfairness and not as devices for excluding relevant, rebuttal evidence.").

I next want to talk to you about the area of damages should liability be found. If you find that—now first I'm going to talk about negligence, but the elements of any damage relate to both theories of recovery in this case. It's just alternative theories of recovery, it's not alternative theories of damages if you find liability.

So when I go over the verdict slip, each one has a section on damages but they would be the same. It's a single case, okay, and not two cases.

Later, the Court explained the verdict slips to the jury:

Let's take a look at [the verdict slip for defendant Gravely]. There are three questions to that verdict slip.... [Q]uestion three states—says state the amount of damages you award to the plaintiff. You put a single dollar figure in there. If you find damages, tell us how many of you agree.... Now the other verdict slip relates only to Niemeyer and remember the Gravely verdict slip is only premised upon product liability.... The next question says state the amount of damages you award to the plaintiff, and for this purpose you don't consider the degree of negligence of each party. That's my job after I get the verdict. If liability and damages are found, then it's the job of the Court subject to some motions by the attorneys to do that.

The jury deliberated and returned to the Court a verdict in favor of Mitchell and against each defendant. The jury returned a specific damage figure against Gravely on the Gravely verdict slip and a different specific damage figure against Niemeyer on the Niemeyer verdict slip, in violation of the Court's instructions. Noting that the verdict was improper, the Court returned the slips to the jury without disclosing the figure to the parties. At the time, the Court stated:

Ladies and gentlemen, remember I said to you that although you're getting two verdict slips, the damages would be the same regardless of which verdict slip you were putting them on. If you put

them on both damages of both verdict slips, they had to be the same. So I'm going to return these to you and ask you to go back to the jury room and deliberate further and make the necessary corrections before I accept the verdict slip.

The Court did not amend the verdict slips to reflect only one space for the damage figure before returning them to the jury. A separate verdict slip would have cleared up the confusion. After further deliberation, the jury returned to the courtroom with a figure of $266,000 on each verdict slip. At that time, the following exchange ensued:

THE COURT: Mr. Foreman, remember I instructed you that it was one sum of damages, and although you were to calculate the comparative negligence, you were not to whack anything up, I would do that. Is it your intention that this verdict be the total of both sums or each individual sum or the same sum for both people, both defendants?

JURY FOREMAN: Same sum.

THE COURT: Same sum, okay. Clerk will take ...

[PLAINTIFF'S COUNSEL]: Your Honor, there's some dissention over here in the jury. I'm not sure that ...

THE COURT: Oh, I didn't see that ... Mr. Foreman, you have found $266,000 damages. My question to you is are the total damages $266,000 or are you awarding $266,000 against each defendants?

JURY FOREMAN: Each defendant.

THE COURT: So it's two times 266?

JURY FOREMAN: Correct.

Therefore, the jury intended the plaintiff's award to be $532,000. The jury was polled and unanimously agreed with this verdict. The jury also found that Mitchell was 40% contributorily negligent with respect to Niemeyer.

Opinion, 8/12/96 at 4–6.

■ Does the jury's confusion require a new trial? We think not. This was a complex case that involved multiple defendants and multiple theories of liability. Nevertheless, the jury's intent was made manifest in

this case. The record reveals the following passage:

> THE COURT: So that I understand, Mr. Foreperson, your total verdict is $532,000?
>
> JURY FOREMAN: Right.
>
> THE COURT: Okay, anyone wish to have the jury polled? [Defense counsel]?
>
> [DEFENSE COUNSEL]: I would like the jury polled.
>
> THE COURT: All right, clerk will you poll the jury.
>
> THE CLERK: As I call your seat number please respond whether you agree or disagree with the verdict as stated.

N.T., 9/13/95 at 11–12. Whereupon the clerk polled the jury and each member agreed with the total verdict of $532,000. *Id.* at 1213.

■■■ "It is well settled that a trial court in this Commonwealth has the power to mold a jury's verdict to conform to the clear intent of the jury." *House of Pasta, Inc. v. Mayo,* 303 Pa.Super. 298, 449 A.2d 697, 701 (1982) (citations omitted). "The power of a trial judge to exercise his discretion in molding a verdict to fit the expressed desires of the jury is a corner-stone of the jury system." *Richards v. Dravo Corp.,* 249 Pa.Super. 47, , 375 A.2d 750, 756 (1977). Moreover, "[v]erdicts which are not technically correct in form but which manifest a clear intent on the part of the jury may be corrected without resort to further jury deliberations or the grant of a new trial." *Mayo, supra* (citing *Rusidoff v. DeBolt Transfer, Inc.,* 251 Pa.Super. 208, 380 A.2d 451 (1977)).

Instantly, there was no basis for the trial court to award a new trial on this issue. There is no question that the jury intended to award a total verdict of $532,000. As to this fact, all confusion was erased with the polling of the jury. As noted above, the trial court itself has concluded that "the jury intended the plaintiff's award to be $532,000." Opinion, 8/12/96 at 6. Accordingly, we find that the trial court was well within its discretion in molding the verdict and that no error

has occurred. In reaching this conclusion, we are guided by our decision in *Richards,* where we stated:

> A review of the record has led us to the conclusion that although the jury was confused as to the mechanics of returning [its] verdict, their intentions were clearly expressed on the record. Thus, we find no abuse of discretion by the trial judge in ordering the verdicts to fit those expressed intentions.

249 Pa.Super. at 58, 375 A.2d at 756.

■■■ Our Supreme Court has stated that "the decision to grant a new trial is one that lies within the discretion of the trial court." *Coker,* 533 Pa. at 445, 625 A.2d at 1184. For the above reasons, we conclude that the court's rulings at trial were sound and supported by law. Accordingly, we hold that the trial court grossly abused its discretion in that its subsequent decision to award a new trial in this matter was manifestly unreasonable. As such, the trial court's order dated December 27, 1995, must be reversed.[3]

Order reversed and case remanded to the trial court for entry of judgment on the jury's verdict. Jurisdiction relinquished.

POPOVICH, J., filed a dissenting opinion.

POPOVICH, Judge, dissenting:

While I agree with the majority that a new trial is not warranted on the basis that the trial court accepted and subsequently molded the jury's verdict, I respectfully disagree with the majority's conclusion that the trial court abused its discretion in granting a new trial on the basis that Sister Mary Regis, an elderly nun, improperly testified as a rebuttal witness.

'Rebuttal evidence' is defined in Black's Law Dictionary (5th ed.1979) as 'evidence given to explain, repel, counteract, or disprove facts [as opposed to opinions] given in evidence by the adverse party.' A party cannot, as a matter of right, offer in rebut-

---

**3.** Before concluding, we note that appellees also ask us to affirm the trial court's order based upon several other grounds. This request is inappropriate as the trial court expressly stated that it only granted relief based upon the two issues addressed above. As stated by our Su-

preme Court: "A relatively narrow scope of review applies when the trial court indicates that the reasons it gives are the only basis for which it ordered a new trial. In that situation, an appellate court can only examine the stated reasons." *Coker,* 533 Pa. at 449, 625 A.2d at 1185.

tal evidence that which is properly part of his case in chief, but will be confined to matters requiring explanation and to answering new matter introduced by his opponent.

*Clark v. Hoerner*, 362 Pa.Super. 588, 525 A.2d 377, 382 (1987) (quoting *Feingold v. Southeastern Pa. Transp. Auth.*, 339 Pa.Super. 15, 488 A.2d 284, 290 (1985)). Contrary to the majority's assertion, I do not agree that Sister Regis' testimony was limited to facts discrediting the appellees' witnesses. Rather, I believe that Sister Regis' testimony consisted primarily of opinions which were offered to contradict appellees' experts' opinions. Specifically, Sister Regis opined that a substance she saw was appellant's blood and that, based on the location of the blood, appellant's accident happened in the area where he told her it happened.[1] Sister Regis' testimony does not qualify as "rebuttal evidence" since she did not offer evidence to explain, repel, counteract or disprove facts (as opposed to opinions) given in evidence by appellees' expert witnesses. Moreover, her testimony should have been presented during appellant's case in chief. Also, she did not confine her testimony to matters requiring explanation or to answering new matter introduced by appellant's opponents. Accordingly, it is my opinion that Sister Regis was not a proper rebuttal witness and that the trial court did not abuse its discretion or commit an error of law in granting a new trial on this basis.

I also respectfully disagree with the majority's conclusion that Sister Regis' surprise to appellees by her appearance does not warrant a new trial. In *Clark, supra,* we granted the appellant a new trial on the basis that the trial court erred in permitting rebuttal testimony following the conclusion of the parties' case in chief. We specifically found that Pa.R.C.P. 4019(i),[2] which requires parties to disclose the identity of witnesses and operates to prevent surprise and unfairness, is

applicable to witnesses called in rebuttal. Here, it is clear that appellant did not identify Sister Regis as a witness prior to trial. Her identity was not disclosed until immediately prior to her giving testimony. The evening prior to Sister Regis "taking the stand," appellant's counsel informed appellees' counsel that he was presenting a rebuttal witness. However, he refused to disclose the witness' identity. N.T. 9/12/95 p. 10. Accordingly, appellees' counsel was not aware of Sister Regis' identity until immediately before she was called as a witness on the final day of trial. Clearly, Sister Regis was a surprise witness. Moreover, I find that no extenuating circumstances existed in this case. There was no evidence to indicate that Sister Regis could not have been identified prior to trial or that she was unavailable to testify during the presentation of appellant's case in chief. Nor is there evidence that appellant was surprised by the testimony of the defense experts such that the need for Sister Regis' testimony could not have been anticipated. The identities of all defense experts called at trial, their backgrounds and the substantive aspects of their testimonies had been supplied to appellant before trial.

I note that appellant argues that there were extenuating circumstances in this case. Specifically, he argues that he did not disclose Sister Regis' identity prior to her testifying because he believed that Gerald Wayne Schmidt, the manager of the Convent and a defense witness, would instruct Sister Regis not to testify. Other than making this bald allegation, appellant has offered no evidence indicating that Mr. Schmidt would have instructed Sister Regis not to testify. Moreover, even if appellant's argument that there were extenuating circumstances permitting him to call Sister Regis as a rebuttal witness was to be accepted, such a determination would be unavailing to appellant because, in

---

1. Sister Regis did not witness appellant's accident. However, the day after the accident she examined the Convent's grounds.

2. Rule 4019(i) is a discovery rule which provides as follows:

 A witness whose identity has not been revealed as provided in this chapter shall not be permitted to testify on behalf of the defaulting party at the trial of the action. However, if the failure to disclose the identity of the witness is the result of extenuating circumstances beyond the control of the defaulting party, the court may grant a continuance or other appropriate relief.

my opinion, the record clearly demonstrates that Sister Regis was not a "rebuttal witness." *Clark, supra.* As the majority correctly indicates, in *Clark* this Court stated that "[t]he rules must be interpreted to prevent surprise and unfairness and not as devices for excluding proper, rebuttal evidence." *Clark,* 525 A.2d at 382. However, in this case, I find that the rules operated to exclude surprise, unfairness *and* improper rebuttal evidence. Accordingly, I must respectfully dissent from the majority's conclusion that Sister Regis testified properly at trial. Moreover, I would affirm the trial court's grant of a new trial on this basis.