614 A.2d 699

**Margaret HARKINS, Appellant,**

**v.**

**CALUMET REALTY COMPANY and Magoune Holding Corporation, d/b/a North Towne Investors, Anthony J. Palmaccio, Jr., M.D., Randall Smith, M.D., Frankford Hospital Torresdale Division and Codman and Shurtleff, Inc., Appellees.**

Superior Court of Pennsylvania.

Argued May 13, 1992.

Filed Sept. 3, 1992.

406

408

Louis S. Fine, Philadelphia, for appellant.

Alan K. Cotler, Philadelphia, for appellee Codman and Shurtleff, Inc.

Before WIEAND, OLSZEWSKI and KELLY, JJ.

OLSZEWSKI, Judge.

This is an appeal from the order of the Philadelphia County Court of Common Pleas dated January 31, 1991, which denied appellant's post trial motions.[1] Appellant brought this action in negligence, medical malpractice, and products liability. At the time of trial, all actions had settled except the action for products liability against the manufacturer of a medical device used in appellant's treatment. We take up appellant's arguments below.

Appellant was injured in a slip and fall on the common walkway at her apartment complex. Appellant's injury was a herniated disk. Appellant was treated for the problem with a surgical procedure called a laminectomy. During the surgery a small sponge, referred to as a "cottonoid," was left in appellant's body. The sponge was designed with a string that

---

1. We note that a final judgment was entered from this order on February 4, 1991.

would be used to facilitate locating and removing the cottonoid after its use during surgery. The cottonoid became separated from the string during the operation and, as a result, was left in appellant's body. In an attempt to locate the cottonoid, the doctors performing the operation caused injuries to appellant's nervous system. The cottonoid was designed with a structure that allowed it to be located with an X-ray. The doctors attempted this procedure, but the X-rays were of such poor quality that the cottonoid could not be located. The cottonoid remains in appellant's back. Appellant filed a cause of action against the owners of her apartment building and a medical malpractice action against the doctors and hospital. Appellant further filed a products liability action against the manufacturer of the cottonoid—Codman & Shurtleff, Inc. [hereinafter "Codman"]. All defendants settled except Codman, and the trial proceeded on the products liability action. After a defense verdict and the denial of post-trial motions, appellant filed this appeal.

Appellant has set forth thirteen questions presented covering almost two pages. This is in violation of Pa.R.A.P. 2116(a), 42 Pa.C.S.A. Further, appellant's questions presented in no way coincide with her argument. Rather, the questions are a murky conglomeration of possible arguments that provide no guidance to this Court regarding the issues in this case. The statement of questions presented is one of the most important parts of any appellate brief. Questions not presented are deemed waived. *Id.* Issues in the statement of questions presented and not developed in argument are also deemed waived. We will address only those issues properly presented and argued.

We have reviewed appellant's brief and find the following issues have been presented and argued. First, appellant argues that the trial court erred by excluding from evidence certain reports of other problems with cottonoids similar to the cottonoid at issue here. Second, appellant argues that the trial court erred by not properly instructing the jury regarding the malfunction theory of products liability. Third, appellant argues that the trial court erred by failing to charge the

jury with certain enumerated points for charge proposed by appellant. Fourth, appellant argues that the trial court erred by charging the jury on superseding cause. Fifth, appellant argues that the trial court erred in an instruction it gave to the jury regarding the liability of the defendant doctors. Sixth, appellant argues that the trial court erred in not sustaining her objections to defense counsel's statements regarding the claims against other defendants. Seventh, appellant argues that the trial court erred in allowing the admission of expert testimony that went beyond the scope of the expert's pre-trial report. We consider each of appellant's issues below.

Appellant's first argument is that the trial court erred by excluding reports of other problems with cottonoids manufactured by Codman.

Our standard of review for rulings on the admission of evidence is well settled. "It has long been clear that questions regarding the admissibility or exclusion of evidence are within the sound discretion of the trial court and will not be disturbed absent an abuse of discretion. An abuse of discretion requires prejudice, bias, ill-will, or misapplication of law." *Rogers v. Johnson & Johnson*, 401 Pa.Super. 430, 436, 585 A.2d 1004, 1007 (1990) (citation omitted). "In assessing the propriety of the trial court's actions, a fundamental consideration in determining the admissibility of evidence is its relevance. Evidence is relevant if it tends to make a fact at issue more or less probable." *Majdic v. Cincinnati Machine Company*, 370 Pa.Super. 611, 618, 537 A.2d 334, 338 (1987) (citation omitted).

■ Appellant has presented a broad argument that these reports should have been admitted under various rules of evidence. Our analysis must begin with whether these reports were relevant to the issues in this case. In order to determine the relevancy of this evidence, we must determine exactly what type of evidence we are dealing with. The reports in question are of other prior similar occurrences. The admission of this type of evidence is considerably limited.

■ Initially, we begin with examining the relevance of this type of evidence in a products liability case. It is well

established that a defective condition is not limited to a defect in manufacture or design. A product can be defective due to a failure to provide a warning or instructions regarding the product's proper use. *Berkebile v. Brantley Helicopter*, 462 Pa. 83, 337 A.2d 893 (1975).[2]

A product's "defective condition" may be proven through circumstantial evidence such as the occurrence of similar accidents. *Cornell Drilling Co. v. Ford Motor Co.*, 241 Pa.Super. 129, 359 A.2d 822, 827 (1976). Evidence of similar accidents occurring at substantially the same place and under the same or similar circumstances is generally admissible to prove a manufacturer's constructive notice of a dangerous or defective condition. However, the admission of such evidence is tempered by judicial concern that the evidence may raise collateral issues which confuse both the real issue and the jury. These matters are vested within the sound discretion of the trial court. *Whitman v. Riddell*, 324 Pa.Super. 177, 471 A.2d 521, 523 (1984). To constitute reversible error, a ruling on evidence must be shown to be erroneous and harmful to the complaining party. *Id.*, 324 Pa.Superior Ct. at 471 A.2d at 521, quoting *Anderson v. Hughes*, 417 Pa. 87, 208 A.2d 789, 791 (1965).

*Majdic*, 370 Pa.Super. at 623–624, 537 A.2d at 340–341 (footnote omitted). The precise issue we are called upon to decide in this case is whether the trial court abused its discretion by excluding the reports under the standard set forth above.

▮▮▮▮ The trial court found that in this case the prior incidents reported did not meet the standard set forth above. Clearly, the burden was on appellant as the proponent of the reports to establish the reports were "... comprised of similar accidents occurring at substantially the same place and under the same or similar circumstances." *Majdic*, at 625, 537 A.2d at 341. The trial court's opinion on this point indicates that the reports were not sufficiently specific with regard to how the cottonoid became detached. Our review of the reports

2. We note here that there is a rising trend toward establishing a post-sale duty to warn. *See Majdic*, at 639–640, 537 A.2d at 348–349 (Wieand, J., dissenting).

indicates that it is difficult to determine from many of the reports exactly why the string became detached. Clearly, there must be some similarity between the prior incidents and the incident at issue for this evidence to be admissible. The reports discuss other detached cottonoids. The reports, however, give little indication regarding the circumstances in the operating room. Without knowing the circumstances in the operating room, it is difficult to find a substantial similarity.

We find further support for our decision in the case of *Rogers v. Johnson & Johnson, supra. Rogers* involved a claim that plaintiff was burned by defective plaster of paris used to set his broken leg. In *Rogers,* the trial court allowed the admission of evidence of a report of a prior incident of a patient being burned by similar plaster of paris. A panel of the Superior Court affirmed the trial court stating, "[i]nstantly, ample support exists in the record for the trial court's decision to admit this report for the limited purpose of demonstrating notice." *Rogers,* at 436, 585 A.2d at 1007. In *Rogers,* the Court found that it was a matter of judgment for the trial court to determine that the prior incident was substantially similar. The products in *Rogers* were similar plaster of paris products. The Court found that although the products and circumstances were not identical, there was sufficient evidence of record to allow the trial court to conclude that the similarities outweighed the differences for the purposes of establishing notice. Judge Beck dissented, finding the evidence of similarities was not sufficient.

In the case before this Court, the trial court found the similarities between the incidents insufficient. We are compelled to agree. A review of the reports indicates that the reports are lacking in detail regarding the circumstances surrounding the detachment of the cottonoid from the string.[3]

3. Appellant argues to some extent on this point that at trial she was pursuing a theory that the cottonoid was defective in that it could not be visualized on an X-ray. We have reviewed the record and find that appellant effectively waived any cause of action in this regard by admitting that the cottonoid could be visualized on an X-ray. (N.T. December 4, 1989, at 79–80.) Appellant admitted that had the X-ray been properly taken, the cottonoid would have been visible on the X-

There could be considerable speculation by the jury regarding the reason why the cottonoid became detached in these other incidents. It is not a matter of finding exact similarity between the incidents, but some similarity must be shown to prevent speculation. Here, the only sure similarity is that a cottonoid became detached during surgery. Evidence of prior occurrences is admitted with considerable caution because such evidence has a great tendency to present collateral and irrelevant matters to the jury. *Majdic,* at 623–624, 537 A.2d at 340–341; *Rogers,* at 442, 585 A.2d at 1010 (Beck, J., dissenting). The burden in this case was upon appellant to demonstrate that the prior incidents involved the same or similar circumstances. The trial court found that appellant failed to carry this burden. Considering the lack of detail presented surrounding the other prior incidents, we find no abuse of discretion in this decision. Since this decision affirms the decision of the trial court that this evidence was not relevant, we do not reach appellant's other evidentiary arguments regarding this evidence. Appellant's first argument is without merit.

. Appellant's second, third, fourth and fifth arguments all deal with alleged errors in the trial court's charge to the jury. Before addressing these issues, we set forth our standard of review for challenges to the trial court's charge. "In reviewing a trial judge's charge, the proper test is not whether certain portions taken out of context appear erroneous. *We look to the charge in its entirety, against the background of the evidence in the particular case,* to determine whether or not error was committed and whether that error was prejudicial to the complaining party." *Reilly by Reilly v. SEPTA,* 507 Pa. 204, 231, 489 A.2d 1291, 1305 (1985) (citation omitted, emphasis added). We will review each of appellant's alleged errors with the above standard in mind.

ray. Appellant thereby effectively waived her right to any claim that the cottonoid was defective because it could not be visualized on an X-ray. Appellant has admitted that the cottonoid could be visualized on an X-ray. In this regard, we find that any reports regarding the fact that the cottonoid could not be visualized on an X-ray were irrelevant.

Appellant's second argument is that the trial court erred by not properly instructing the jury on the malfunction theory of products liability. Appellant argues in this regard that although the court gave an instruction on this point, the instruction was not sufficient because the remainder of the trial court's charge underemphasized this theory of recovery. Specifically, appellant insists in her brief that the trial court repeatedly emphasized that appellant was required to prove a defect in order to recover. Appellant's argument is that under the malfunction theory, she was not required to establish a defect. Appellant's argument is based upon a false assumption regarding the nature of the malfunction theory in products liability.

The Pennsylvania Supreme Court adopted the malfunction theory of products liability in *Rogers v. Johnson & Johnson*, 523 Pa. 176, 565 A.2d 751 (1989) (The Superior Court decided the *Rogers* decision cited earlier on remand from the Supreme Court decision cited here.). Our Supreme Court summarized the theory in that case:

A plaintiff presents a *prima facie* case of strict liability by establishing that the product was defective and that the product caused the plaintiff's injury. In most instances the plaintiff will produce direct evidence of the product's defective condition. In some instances, however, the plaintiff may not be able to prove the precise nature of the defect in which case reliance may be had on the "malfunction" theory of product liability. This theory encompasses nothing more than circumstantial evidence of product malfunction. *It permits a plaintiff to prove a defect in a product with evidence of the occurrence of a malfunction and with evidence eliminating abnormal use or reasonable, secondary causes for the malfunction.* It thereby relieves the plaintiff from demonstrating precisely the defect yet it permits the trier-of-fact to infer one existed from evidence of the malfunction, of the absence of abnormal use and of the absence of reasonable, secondary causes.

*Rogers*, at 182, 565 A.2d at 754 (citations omitted, emphasis added). Appellant has argued that the trial court erred by

instructing the jury that she had the burden of proving a defect because she did not have that burden under the malfunction theory. Appellant is mistaken. The malfunction theory allows a plaintiff an additional means of proving a defect, it does not relieve the burden of establishing a defect. Appellant's argument that the trial court should not have instructed the jury that she had the burden of establishing a defect is misplaced. A review of the trial court's charge indicates no error of law in instructing the jury that appellant had the burden of establishing a defect. Accordingly, we find the charge overall provided a correct statement of the law of this Commonwealth. Appellant's second argument is without merit.

Appellant's third argument is that the trial court erred by not instructing the jury with six of appellant's proposed points for charge. The six points are appellant's points 40, 45, 54, 56, 73, and 104. We have reviewed the court's jury instruction as a whole and find that it adequately summarized the applicable law. We will address each point below.

■ Appellant's point for charge 40 misstates the law. . The point states that if the jury found that the doctor did not cut the string then the jury *must* find for appellant. This is incorrect. If the doctor did not cut the string, one could conclude that a defect caused the cottonoid to detach. Clearly, however, this is not a required conclusion. There are other possible explanations. The only way Codman would be liable is if the jury found all the elements of products liability. A finding that the doctor did not cut the string does not fulfill the requirements of a cause of action in products liability.

■ Appellant's point for charge 54 deals with requirements of the malfunction theory. The point was adequately covered by the trial court's charge. (N.T. December 6, 1989, at 27–28.) The trial court was not required to accept a party's wording in its charge; rather, the court was free to formulate its own presentation so long as the charge adequately represents the law.

■ Appellant's point for charge 56 states that the jury was allowed to presume that the cottonoid would not normally detach from the string in the absence of a defect. This is essentially a charge on circumstantial evidence. The point was adequately addressed in the trial court's charge. (N.T. December 6, 1989, at 29–30.) The trial court discussed the fact that a defect could be proven by circumstantial evidence. Further, the trial court gave the usual extensive charge on the definition of circumstantial evidence. Again, the trial court was not required to accept a party's wording of the charge so long as the charge adequately represents the law.

Appellant's point for charge 104 deals with the standard of care placed upon the doctors. The point was adequately addressed in the trial court's charge. (N.T. December 6, 1989, at 33–42.) The standard of care of the doctors was relevant in this case to whether any defect was a substantial factor in bringing about appellant's injuries and whether there was a superceding intervening cause. The trial court extensively discussed the standard of care of the doctors. Again the trial court was not bound to accept a party's wording of the charge so long as the charge adequately represents the law.

Appellant's point for charge 45 lists what appellant believed to be the defects in the cottonoid. Appellant's point for charge 73 discusses the warning or instruction theory of defect. The court explained in responding to appellant's objections to the charge that no such instructions were required because appellant did not present evidence of a specific defect or of a warning or instruction defect.

■ As stated previously, a defect can be a defect in design, manufacture or in failure to warn or instruct. The question with regard to appellant's points 45 and 73 is whether appellant presented evidence to support a charge on those defects. Point 45 lists as defects whether the marking string was properly attached, whether the marking string was properly protected from being cut and whether the manufacturer put the product on the market without a proper warning that the string should be tested prior to use. Point 73 specifically charges on the law regarding failure to warn. Appellant was

clearly not entitled to any instruction that was not relevant to the issues supported by the evidence. In this case, our review of the testimony indicates a complete lack of testimony regarding any specific defect. The entire case presented at trial centered around a theory that a defect can be inferred circumstantially from the fact that there was a malfunction. As was described above, this is a viable theory of recovery in a products liability case. We find, however, that in a case built upon a malfunction theory, plaintiff is not necessarily entitled to an instruction on any specific defect.

Addressing appellant's claimed defects, we find appellant was not entitled to an instruction on any specific defect. The question is whether appellant was prejudiced by the trial court's failure to specifically direct the jury regarding each alleged defect. We believe she was not. First, regarding a defect that the string was not properly attached, we find this was apparently the defect appellant wished to prove circumstantially through the malfunction theory. It is apparent from even a cursory review of this case that appellant was alleging that the string was not properly attached. We find no prejudice in the trial court's failure to reiterate what was obvious from the evidence presented. Further, there was no direct evidence presented that the cottonoid was not properly attached to the marking string. Second, regarding a charge that the string was not properly protected from being cut, we find that there was no evidence presented by appellant to support such a theory. Clearly, the jury could not determine how a marking string should be constructed to protect it from being cut without some testimony on this subject. Finally, regarding any charge on a defect in warning or instruction, we find that appellant completely failed to present any evidence to support such a theory.

Appellant's arguments regarding instructions on specific defects are very questionable in another regard. Appellant presented no expert testimony regarding a specific defect. Appellant had the right to proceed under a malfunction theory. The difficulty is that the court could not instruct the jury that evidence of a specific defect was presented

without evidence supporting such a finding. We do not see how appellant could expect the jury to find a specific defect in the design, manufacture or warnings/instructions of this product without expert testimony on these subjects. The design, manufacture and necessary warnings/instructions associated with surgical cottonoids are not within the knowledge of the average layperson. *See Dion v. Graduate Hospital,* 360 Pa.Super. 416, 425, 520 A.2d 876, 881 (1987). Appellant not only failed to present testimony of an expert opinion of a defect, appellant completely failed to present any background into the specific details she alleged. Appellant's third argument is without merit.

Appellant's fourth argument is that the trial court erred in charging the jury on superceding cause. Appellant is entitled to no relief, however, because the jury never reached the issue of superceding cause. The jury found that the product was not defective. (N.T. December 6, 1989, at 101–104.) The jury never went on to determine whether there was a superceding cause. Appellant's fourth argument is without merit.[4]

Appellant's fifth argument is that the trial court erred in giving an instruction regarding the liability of the defendant doctors. To address this issue, some background is required. First, the action against the doctors had been settled at the time of trial. Second, appellant's counsel, during closing argument, made an argument that was objected to by opposing counsel to the extent that the doctors who testified had no liability. Appellant's counsel stated "[t]hey would not lose anything. They would not have lost a single thing if they came into you (sic) and said they cut the string. They would not have to pay money if they said that . . ." (N.T. December 5, 1989, at 26.) At this point, opposing counsel objected and

4. We note here that, although the trial court technically misstated the definition of superceding cause at one point in the charge, a reading of the entire charge presents a correct statement of the law on superceding causation. If, therefore, the jury had reached this issue, we would have little difficulty affirming on this basis.

the objection was sustained. The court responded to this comment with a curative instruction.

Also, there was a comment made Dr. Palmaccio and Dr. Smith would not have to pay money and somehow or another this had some connection with their taking the witness stand, coming to testify in this case.

Well, if they were parties to this action, and you found they were liable and responsible to the plaintiff, then Drs. Palmaccio and Smith, if so determined, would have to compensate the plaintiff.

(N.T. December 6, 1989, at 57.) This is not an instruction that the court would have given absent the comments of appellant's counsel. Our review of appellant's counsel's closing argument indicates that the comments surrounding the liability of the doctors were an unsupported attack on the doctors' credibility. The trial court could have handled this by simply instructing the jury that the liability of the doctors was not at issue, except insofar as the doctors' conduct might constitute a superceding cause. We find that the trial court's curative charge sufficiently directed the jury that this was not a proper inquiry. We find that the entire charge directed the jury to the proper issues. Appellant's fifth issue is without merit.

Appellant's sixth argument is that the trial court erred in not sustaining her objections to defense counsel's statements regarding the claims against the other defendants. Appellant's argument is that the trial court allowed evidence of a settlement. That is not what occurred in this case. Appellant argues that although the word settlement was not used, the impact on the jury of the evidence of the other claims was that a settlement had occurred. Of course, this is one inference that could be made in any case where there are multiple defendants and the jury is not deciding the case against all of the defendants. It is quite clear, however, that cases involving multiple defendants in which some but not all the defendants have settled are tried in the courts of this Commonwealth on a regular basis. In those cases, the trial courts are in a difficult position because they must carefully guard against any reference to a settlement while allowing evidence

to apportion liability and pursue defenses. Appellant has raised numerous meritless arguments in this regard; we address each below.

Appellant is correct that evidence of a settlement would be impermissible. In this case, however, appellant mischaracterizes the evidence in question. A review of appellant's causes of action indicates that they are somewhat inconsistent. This is most clearly shown by appellant's malpractice action against the doctors alleging that they cut the string. If the doctors cut the string, a jury could find that this was a superceding cause relieving Codman of liability. Further, the malfunction theory of products liability allows a jury to circumstantially find a defect by finding a malfunction, no improper use and no reasonable secondary causes. If the doctors cut the string, this could be found by the trier of fact to be misuse or a reasonable secondary cause. Thus, this is a viable defense that the defense was entitled to pursue with admissible evidence at trial.

The defense was not allowed to present any inadmissible or irrelevant matters. Appellant presented the existence of the other claims to the jury when reading portions of depositions to the jury. Appellant apparently had no objection to being open regarding the litigation at trial. Information regarding the nature of related settled causes of action, although of questionable relevance, does not violate the rule against admission of settlements unless the settlement is introduced. In this case, the settlement was not introduced.

Appellant next complains that defense counsel argued that she sued the hospital and doctors. Defense counsel was stating true facts, relevant to the defenses described above. Further, appellant was introducing the same information.

Appellant next complains that defense counsel referred to one of the experts as "plaintiff's expert." Although appellant did not call the expert at trial, the expert was acquired by appellant. Clearly, which party retained an expert is extremely relevant to the expert's credibility.

■ Appellant also complains that defense counsel used her complaints in the actions against the doctors against her on cross-examination, and further that defense counsel introduced admissions of appellant that were made in response to requests for admission filed by the other defendants. Our review of the testimony indicates that these matters were relevant and admissible. First, pleadings are admissible as admissions of the verifying party. *Tops Apparel v. Rothman,* 430 Pa. 583, 244 A.2d 436 (1968). In this case, the matters admitted in the complaints were directly relevant to the defenses described above. Second, regarding the admissions, the admissions were of record in this case. Admissions of a party opponent are admissible. The admissions were also relevant to the defenses described above. Appellant's argument in this regard rambles on for several pages on the basis that the defense used plaintiff's case preparation against the other defendants to develop the defense case. This argument is ridiculous. The defense used relevant, admissible matters of record to develop its case. Appellant's sixth argument is without merit.

■ Appellant's final meritless argument is that the trial court erred in admitting expert testimony that went beyond the scope of the expert's pre-trial report. Appellant complains that in Dr. Fager's video trial deposition, Dr. Fager's testimony went beyond the scope of his pre-trial report. Specifically, appellant complains that in his pre-trial report Dr. Fager did not state the reason that the cottonoid became detached, but that in his trial deposition Dr. Fager testified that the cottonoid marking string was cut by one of the doctors. The difficulty here is that appellant never raised this objection at trial. The record is devoid of any objection by appellant to the introduction of the video trial deposition in its entirety. Accordingly, appellant's argument in this regard is waived. Appellant's final issue is without merit.

For all of the foregoing reasons, the judgment of the court of common pleas is affirmed.

· Order affirmed.

WIEAND, J., concurs in the result.