J. S48020/16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| LONNELLE M. JOHNSON, JR., | : | |
| | : | |
| Appellant | : | No. 1429 WDA 2015 |

Appeal from the PCRA Order August 11, 2015
In the Court of Common Pleas of Allegheny County
Criminal Division No(s): CP-02-CR-0011414-2009

BEFORE: BOWES, DUBOW, and MUSMANNO, JJ.

MEMORANDUM BY DUBOW, J.:                    **FILED OCTOBER 21, 2016**

Appellant, Lonnelle M. Johnson, Jr., appeals the PCRA court's Order dismissing without a hearing his first Petition under the Post-Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541, *et seq*. For the reasons that follow, we affirm.

The trial court previously summarized the factual history of this case as follows:

> Thomas Nguyen testified that he and his brother, Hoang, were in the Hill District of Pittsburgh at approximately noon on June 26, 2009, dropping his brother's baby off to the mother. Hoang[] was driving and Thomas was in the passenger's seat while the vehicle was stopped on Bedford Avenue. As they were stopped there, a group of people, which included [Appellant], waved toward Hoang. Hoang pulled the vehicle to the side of the road to talk to those individuals. One of the individuals, later identified by [Thomas] as "Woozy" [a/k/a Daniel Williams], was speaking with [Hoang] through the driver's side window. Two other individuals were also present outside the vehicle. While

[Hoang] was talking with Woozy, another individual, later identified as [Appellant], jumped into the backseat of the car on the driver's side, pointed a gun at Hoang and told him to "give it up." Thomas took that to mean that he wanted them to give him anything of value that he and [Hoang] had.

At this point, however, Hoang put the car into drive and began to drive away. When he did this, [Appellant] said, "Don't try it. I'll shoot you." Hoang stepped on the gas pedal. As soon as the car started moving, [Appellant] started shooting. Thomas heard at least three gunshots. The vehicle then crashed into a tree. Thomas blacked out for a few seconds. When he awoke, he did not see [Hoang] in the driver's seat any longer. He tried to get out, but his door would not open. He indicated that he noticed that he had been shot in the leg. He still saw the individual identified as Woozy standing near a building but did not see the individual who had shot him.

While he was at the hospital, the police came and showed him photographs. He stated that he was able to speak to the police and was not under the influence of drugs at that point. He recalls the conversation he had with the police. He was shown several sets of photographs. He identified Woozy from one set and [Appellant] from another set of photographs. Thomas identified [Appellant] in the [c]ourtroom and identified him as the individual who jumped into the back seat of the car, pointed the gun at him and [Hoang] and shot them.

Daniel Williams ("Woozy"), also testified. He stated that he saw [] Hoang, drive up and wave[] at him to speak with him. [Williams] spoke with [Hoang] through the driver's side door and noticed that [Hoang's] brother was in the passenger seat. [Williams] stated that he talked to [Hoang] for a few minutes. While standing next to the driver's window, [Williams] saw someone holding a gun jump into the back seat of the car and say something to the two victims. [Williams] testified that [Hoang] drove off with the individual still in the backseat. The car travelled a short distance and then struck a tree. … [Williams] said that the individual in the car got out and ran. He then saw [Hoang] get out of the car, put his hand to his head and fall to the ground. Williams stated that he stayed at the scene and was placed under arrest when the police showed up. He stated that he provided a description of the individual he saw

but could not provide the name of the person. He admitted that he told them that he was afraid to identify that person.

On cross[-]examination, Williams testified that he knew [Appellant], and had known him for years. He stated that [Appellant] was not the individual who was in the backseat of the vehicle.

Detective Bonzale Boose, with the City of Pittsburgh Homicide Division, testified that he interviewed Williams and that Williams told him that while he was standing at the driver's window talking with [Hoang], an individual walked up to his right side, opened the rear door on the driver's side, and got in with a handgun pointed at the driver. He said the car pulled away and he heard several shots. The car then accelerated a few feet, turned and struck the tree, where it came to rest. He said he saw the individual get out of the car and run into the projects. He also said he saw the driver get out of the car and collapse to the ground. When Detective Boose asked him if he could identify the person he saw enter the car[], [Williams], according to Detective Boose, said "He could ID that individual, but he will not ID an individual under any circumstances out of safety for himself and his family."

The Commonwealth also presented fingerprint evidence. Latent prints were obtained from [the] rear driver's door and door frame, which was where both the surviving victim and Williams said the assailant had entered the vehicle. Of the total of nine latent prints of value obtained from the [] vehicle, three were matched to [Appellant]. Two from the rear door matched [Appellant's] left little finger and one matched his left middle finger.

In addition, the Commonwealth presented testimony from Walter Lorenz, a forensic scientist from the Allegheny County Medical Examiner's Division of Laboratories. Dr. Lorenz testified that DNA samples were obtained from the exterior and interior handles from the rear driver's side door. Samples were also obtained from [Appellant] and the victim, Hoang Nguyen. The comparison between the sample from the interior door handle and the samples from [Appellant] and the victim resulted in Dr. Lorenz excluding both as significant contributors to the DNA material obtained from the interior door handle. The comparison between the DNA material obtained from the exterior handle and that from the victim and [Appellant], however, resulted in the

exclusion of the victim as being a possible contributor and the determination that the DNA from the door handle and from [Appellant] matched. The probability of such a match was one in 1.3 billion among African-Americans.

Trial Court Opinion, filed 11/18/11, at 4-9 (citations to the record omitted).

Appellant was convicted after a jury trial of first-degree murder, aggravated assault, carrying a firearm without a license, and two counts of robbery. On October 25, 2010, the court sentenced him to a mandatory term of life imprisonment for the murder conviction, as well as a concurrent, aggregate term of 20 to 60 years' incarceration for the remaining convictions. On July 11, 2012, this Court affirmed Appellant's convictions, but vacated his Judgment of Sentence and remanded for resentencing based upon the trial court's failure to grant Appellant credit for time served. *Commonwealth v. Johnson*, No. 1937 WDA 2010, unpublished memorandum (Pa. Super. filed July 11, 2012). Appellant was re-sentenced on May 5, 2013.

On August 26, 2013, Appellant filed a timely *pro se* PCRA Petition. The PCRA court appointed counsel, who filed a Motion to Withdraw as Counsel with a "no-merit" letter pursuant to *Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988), *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. 1988) (*en banc*). Shortly thereafter, PCRA counsel filed a Motion to Supplement Previous Motion to Withdraw.

On June 30, 2014, the PCRA court filed a Notice of Intent to Dismiss Appellant's PCRA Petition without a hearing pursuant to Pennsylvania Rule of

Criminal Procedure 907. In response, Appellant filed an amended PCRA Petition *pro se*. On August 11, 2015, after reviewing Appellant's amended *pro se* Petition, the PCRA court filed a Memorandum Opinion and Amended Rule 907 Notice.

On September 2, 2015, Appellant filed a timely appeal to this Court. The PCRA court did not direct Appellant to file a Statement of Matters Complained of on Appeal pursuant to Pa.R.A.P. 1925(b), and Appellant did not do so of his own accord. The PCRA court did not file an Opinion pursuant to Pa.R.A.P. 1925(a).

In his Brief to this Court, Appellant provides the following "Statement of Questions Presented":

> 1. Whether the PCRA court erred in dismissing Appellant's PCRA Petition without holding an evidentiary hearing to determine whether trial counsel was ineffective?
>
> 2. Whether trial counsel provided and serviced Appellant ineffective assistance when trial counsel failed to investigate and interview potential alibi exculpatory witnesses in support of Appellant's actual innocence?
>
> 3. Whether [the] PCRA court erred in permitting PCRA counsel to withdraw when the language it used shows that PCRA counsel's 'no-merit' lettered petition reveals that PCRA counsel had limited its investigation and interview to just 'one' lonely witness where PCRA counsel's investigation was solely based and relied upon review of previous transcripts of witness's testimony that witness could not positively identified Appellant as the actual suspect?

Appellant's Brief at iv.

We note at the outset that Appellant's *pro se* Brief is comprised of a repetitive and rambling assertion of errors that does not comply with

Pa.R.A.P. 2118-2119.[1]  Despite its significant flaws, we are able to discern from the discussion portion of the Brief two distinct issues: (i) ineffective assistance of trial counsel for failing to investigate and present four witnesses at trial; and (ii) a challenge to the denial of the PCRA Petition without a hearing.

When reviewing the propriety of an order granting or denying PCRA relief, this Court is limited to determining whether the evidence of record supports the determination of the PCRA court, and whether the ruling is free of legal error.  *Commonwealth v. Boyd*, 923 A.2d 513, 515 (Pa. Super. 2007).  We grant great deference to the findings of the PCRA court, and these findings will not be disturbed unless they have no support in the certified record.  *Commonwealth v. Wilson*, 824 A.2d 331, 333 (Pa. Super. 2003).  When the PCRA court denies a petition without an evidentiary hearing, we "examine each issue raised in the PCRA petition in light of the record certified before it in order to determine if the PCRA court erred in its determination that there were no genuine issues of material fact in controversy and in denying relief without conducting an evidentiary hearing."

---

[1] The argument section of Appellant's Brief contains three subsections with headings that do not match or otherwise correspond with the questions presented in the Statement of Questions Presented.  *See* Appellant's Brief at 3, 13, 16.  Moreover, our review of Appellant's Brief reveals that the headings, which subdivide his argument sections, bear little relation to the arguments developed thereunder.

***Commonwealth v. Khalifah***, 852 A.2d 1238, 1240 (Pa. Super. 2004) (citation omitted).

## Trial Counsel's Failure to Call Potential Witnesses

In his first issue, Appellant avers that trial counsel was ineffective for failing to investigate, interview, and call four witnesses at trial.

In analyzing claims of ineffective assistance of counsel, we presume that trial counsel was effective unless the PCRA petitioner proves otherwise. ***Commonwealth v. Williams***, 732 A.2d 1167, 1177 (Pa. 1999). In order to succeed on a claim of ineffective assistance of counsel, Appellant must demonstrate (1) that the underlying claim is of arguable merit; (2) that counsel's performance lacked a reasonable basis; and (3) that the ineffectiveness of counsel caused the appellant prejudice. ***Commonwealth v. Fulton***, 830 A.2d 567, 572 (Pa. 2003). Appellant bears the burden of proving each of these elements, and his "failure to satisfy any prong of the ineffectiveness test requires rejection of the claim of ineffectiveness." ***Commonwealth v. Daniels***, 963 A.2d 409, 419 (Pa. 2009).

It is well settled that a PCRA petitioner cannot prevail on a claim of trial counsel's ineffectiveness for failure to call a witness unless the petitioner shows that: "(1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so

prejudicial as to have denied the defendant a fair trial." ***Commonwealth v. Washington***, 927 A.2d 586, 599 (Pa. 2007). To satisfy the prejudice prong of this analysis, a PCRA petitioner "must show how the uncalled witnesses' testimony would have been beneficial under the circumstances of the case." ***Commonwealth v. Gibson***, 951 A.2d 1110, 1134 (Pa. 2008) (citations omitted).

*Witness Andrew Davis*

Appellant avers that trial counsel was ineffective for failing to investigate and interview Andrew Davis ("Davis").[2] This argument is without merit because, as explained by the PCRA court, trial counsel did interview Davis and discovered that Davis' testimony would not have aided in Appellant's defense:

> First, trial counsel did, in fact, secure an interview of Andrew Davis through his private investigator. The report from that interview was attached to the defendant's Motion to Supplement Previous Motion to Withdraw. Second, the report of that interview reveals that Mr. Davis would not have offered testimony favorable to the defendant. He told the investigator that he could not identify any of the three individuals he saw, including the person who shot the victim. His inability to identify the assailants could not possibly have aided Mr. Johnson in his trial.
>
> . . .
>
> Nowhere in this statement is Andrew Davis reported to have said anything that would have been exculpatory to the defendant. It was the defendant's burden to proffer, in his Petition, facts

---

[2] Davis was the only witness mentioned by Appellant in his initial *pro se* Petition.

which, if proven at a hearing, would establish his right to relief. Here, as he is alleging that trial counsel was ineffective for failing to present testimony from Andrew Davis, it was his burden to establish what Andrew Davis would have said if called as a witness and how that testimony would have changed the outcome of the trial. He failed to meet that burden because all that Andrew Davis could have said is that he could not identify any of the men. He did not say, as the defendant seems to suggest, that the defendant was not present. He said he could not identify any of the men present. Because Andrew Davis would not have offered any testimony helpful to the defendant, counsel was not ineffective in failing to present him as a witness.

Trial Court Memorandum Opinion and Amended Notice of Intention to Dismiss, filed 8/11/15, at 1-3.

Our review of the record supports the PCRA court's analysis. Accordingly, we conclude that the PCRA court did not err in determining that there were no genuine issues of material fact in controversy, and that Appellant is not entitled to relief on this claim.

*Witnesses George Lyle and Daniel Williams*

Appellant next avers that trial counsel was ineffective for failing to call witness George Lyle ("Lyle"), who "if [he] had been called upon, would have testified truthfully that Appellant was with him on the day and at the time of the alleged shooting incident for which [Appellant] was wrongfully accused of" and failing to call Daniel Williams ("Williams"). Appellant's Brief at 8, 5.

Contrary to Appellant's assertion, both Lyle and Williams testified at trial. Lyle, who testified on Appellant's behalf, told the jury that Appellant was with him at the time of the murder. N.T., 7/28/10, at 249-66. Williams, called as a witness for the Commonwealth, testified to seeing a

man with a gun enter the victim's vehicle, threaten him, and run from scene following the crash. N.T., 7/27/10, at 84-87. On cross-examination by trial counsel, Williams testified that he knew Appellant and that Appellant was not the man he saw running from the vehicle. *Id.* at 92. Accordingly, Appellant's contention fails: trial counsel can hardly be deemed ineffective for failing to call witnesses who did, in fact, testify.

*Witness Marcel Green*

Finally, Appellant avers that trial counsel was ineffective for failing to call Marcel Green ("Green") as a witness at trial. Appellant did not mention Green in his initial *pro se* PCRA Petition, or in his counseled amended PCRA Petition. Moreover, his Brief to this Court contains no information regarding what testimony Appellant believes Green might have given had he been called at trial, or any of the other elements required under **Washington**, 927 A.2d at 599. Instead, Appellant's only reference to, and entire argument regarding, Green is the following single sentence: "The dispositive issue is whether trial counsel's ineffectiveness for failure to investigate other potential exculpatory witnesses [*sic*]; Daniel Williams, Andrew Davis, and Marcel Green." Appellant's Brief at 5. Therefore, Appellant waived all claims regarding Green by failing to raise this claim below or develop it in his Brief to this Court. **See** Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."); **Harkins v. Calumet Realty Co.**, 614 A.2d 699, 703 (Pa. Super. 1992) (noting that

issues raised but not developed the argument section of a brief will be deemed waived).

## Denial of PCRA Petition Without a Hearing

In his second and third argument sections, Appellant avers, in substance, that the PCRA court erred in dismissing his Petition without a hearing.[3] We disagree. There is no absolute right to an evidentiary hearing on a PCRA petition, and the PCRA court may decline to hold a hearing if the claims are patently frivolous and without a trace of support in the record. ***Commonwealth v. Jordan***, 772 A.2d 1011, 1014 (Pa. Super. 2001).

In the instant case, as discussed ***supra***, the claims raised by Appellant were either patently frivolous or never raised before the PCRA court. PCRA counsel, in a Motion to Supplement Previous Motion to Withdraw, provided the PCRA court with a copy of trial counsel's witness interview report for Davis. Motion to Supplement Previous Motion to Withdraw, Exhibit A, filed

---

[3] We note that the headings for these argument sections purport to raise other claims of error by the PCRA court and ineffectiveness by trial counsel. None of these claims are developed in the argument that follows, however, and in substance both arguments aver that the PCRA court erred in dismissing Appellant's claim without a hearing. To properly develop an issue for our review, Appellant bore the burden of ensuring that his argument section included citations to pertinent authorities as well as discussion and analysis of the authorities. ***See*** Pa.R.A.P. 2119(a); ***Commonwealth v. Hardy***, 918 A.2d 766, 771 (Pa. Super. 2007) ("[I]t is an appellant's duty to present arguments that are sufficiently developed for our review. The brief must support the claims with pertinent discussion, with references to the record and with citations to legal authorities." (citations omitted)). Therefore, Appellant waived any claims suggested in his headings, where he failed to discuss them or develop them in the arguments that follow.

6/16/14. That statement made it clear that counsel did, in fact, interview Davis and discovered that he had no exculpatory testimony to offer. For Lyle and Williams, a review of the trial record was sufficient to show that both witnesses did in fact testify at trial. Therefore, a hearing was not needed to further develop any of Appellant's meritless claims regarding these witnesses.

Based on all of the foregoing, we conclude that the PCRA court did not err in dismissing Appellant's Petition without a hearing. Accordingly, we affirm the PCRA court's denial of Appellant's Petition.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/21/2016

- 12 -