J-S58033-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| VIRGINIA ANN KURSCHINSKE | : | |
| | : | |
| Appellant | : | No. 717 WDA 2019 |

Appeal from the Judgment of Sentence Entered April 12, 2019
In the Court of Common Pleas of Crawford County Criminal Division at
No(s): CP-20-CR-0000463-2018

BEFORE: PANELLA, P.J., BENDER, P.J.E., and DUBOW, J.

MEMORANDUM BY DUBOW, J.:　　　　　　　　　**FILED NOVEMBER 27, 2019**

Appellant, Virginia Ann Kurschinske, appeals *pro se* from the April 12, 2019 Judgment of Sentence entered in the Crawford County Court of Common Pleas following her conviction of Unsworn Falsification to Authorities.[1] Appellant challenges, *inter alia*, the weight of the evidence. After careful review, we affirm.

The relevant facts and procedural history are briefly as follows. Appellant is the former manager of Spanky's Tobacco World ("Spanky's") in Titusville, Crawford County.[2] Spanky's sells, among other things, lottery tickets. The Pennsylvania Lottery noticed abnormally high scratch-off lottery ticket sales at Spanky's. Consequently, on May 3, 2017, the Pennsylvania

---

[1] 18 Pa.C.S § 4904(a)(2).

[2] Spanky's also employed Amanda Hicks.

Lottery sent Jason Donmoyer ("Donmoyer"), a Retail Compliance Investigator to investigate the irregularity.

On that day, Appellant was working behind the counter at Spanky's, and proceeded to falsely identify herself to Donmoyer as "Amanda." She also signed the name "Amanda Hicks" on a verification form that Donmoyer gave to her. By signing this form, Appellant acknowledged that she had received the Lottery's official form explaining its policy concerning retailers and retail employees purchasing and claiming winning lottery tickets.[3] Appellant initially denied that she had authority to activate scratch-off lottery tickets and had access to the locked filing cabinet in which Spanky's kept its lottery inventory,[4] but later unlocked it for inventory inspection by Donmoyer.

Ultimately, Appellant revealed to Donmoyer that she was not, in fact, Amanda Hicks, and instead she identified herself as "Jen Kurschinske."[5] Donmoyer returned the verification form Appellant had falsely signed as "Amanda Hicks" to Appellant and she then signed the form, on the same line where she had falsely signed the name "Amanda Hicks," with the name Jen Kurschinske.

_____

[3] This is the Lottery's "Prohibitive Retailer Claiming Policy" form.

[4] Appellant claimed that only two Spanky's employees—Jeff Clifton, the owner, and Jill, the manager who works on Sundays—could activate the scratch-off lottery tickets, and that only Clifton and Jill had access to the locked lottery inventory filing cabinet.

[5] Apparently, even though Appellant's first name is Virginia, unbeknownst to Donmoyer, she commonly went by the first name Jen or Jennifer.

As a result of Appellant's deception, the Commonwealth charged her with one count each of Forgery and Unsworn Falsification to Authorities. Appellant, represented by counsel, proceeded to a jury trial where the Commonwealth presented the testimony of, *inter alia*, Donmoyer and Amanda Hicks. Relevantly, Donmoyer testified that he arrived at Spanky's in the late morning or early afternoon and two store employees were working. N.T., 3/11/19, at 23. Donmoyer testified that he identified himself to Appellant by saying his name and showing her his photo ID badge and business card, and explained the purpose of his visit. *Id.* at 24-25. Appellant identified herself as "Amanda." *Id.* at 24. Donmoyer then reviewed the Prohibitive Claim Policy with Appellant and gave her the form to sign acknowledging that she had read the Prohibitive Claim Policy. *Id.* at 25-30. Donmoyer testified that Appellant signed the acknowledgement form with the name "Amanda Hicks." *Id.* at 33. Donmoyer also testified that Appellant told him that only the Spanky's owner and its manager, Jill, had authority to access, activate, and order scratch-off ticket inventory. *Id.* at 36-38. He testified that Appellant informed him that she did not have access to the locked filing cabinet where Spanky's stored the scratch-off lottery inventory. *Id.* at 39. Donmoyer denied threatening, coercing, or intimidating Appellant into answering his questions. *Id.* at 38.

Donmoyer then testified that, because Appellant had identified herself as Amanda Hicks and had indicated that she did not have access to the locked filing cabinet, he called Jeff Clifton, the store owner, who asked to speak with the employee he believed was Amanda Hicks. *Id.* at 40-43. After Appellant

hung up the phone with Clifton, Donmoyer became aware that Appellant's name was actually Jen Kurschinske. *Id.* at 43. Donmoyer testified that, uncoerced by him, Appellant then signed the name "Jen Kurschinske" on the acknowledgement form. *Id.* at 43, 46. Appellant proceeded to unlock the filing cabinet containing the scratch-off lottery ticket inventory. *Id.* at 44-45. Donmoyer testified that, as far as he knows, Spanky's does not have an employee named "Jill." *Id.* at 43.

At the close of the Commonwealth's case, Appellant moved for a judgment of acquittal pursuant to Pa.R.Crim.P. 608, which the trial court granted as to the Forgery charge only.

Relevant to the instant appeal, Appellant testified on her own behalf. She described herself as "rattled" on the day of Spanky's inspection. N.T., 3/12/19, at 27. She testified that she was initially skeptical that Donmoyer worked for the Pennsylvania Lottery because she had never met him before, she thought it was possible that his identification was inauthentic, and he looked "really shabby." *Id.* at 14, 27-29. She admitted that she wrote Amanda Hicks's name that day, but explained that she was in a hurry to leave Spanky's and she thought she was merely writing the name of a Spanky's contact person on a piece of scrap paper. *Id.* at 30, 32-33. She denied ever having seen the verification form or writing her name or Amanda Hicks's name on it, and suggested that someone had traced Amanda Hicks's name onto the verification form. *Id.* at 31-32.

- 4 -

Following Appellant's two-day trial, on March 12, 2019, the jury convicted Appellant of Unsworn Falsification to Authorities. On April 12, 2019, the court sentenced Appellant to six months' probation. On April 15, 2019, Appellant filed a Post-Sentence Motion challenging the weight of the evidence, which the court denied on April 17, 2019. On May 8, 2019, Appellant filed a timely *pro se* Notice of Appeal.

On May 16, 2019, counsel filed in the trial court a Motion to Withdraw Appearance alleging that Appellant had communicated to counsel that she no longer wanted counsel to represent her. Motion, 5/16/19, at ¶ 1. Accordingly, the trial court scheduled a hearing pursuant to ***Commonwealth v. Grazier***, 713 A.2d 81 (Pa. 1998). On May 28, 2019, Appellant filed *pro se* a Pa.R.A.P. 1925(b) Statement. Following the ***Grazier*** hearing, on June 6, 2019, the trial court entered an Order granting counsel's Motion to Withdraw. The court filed a Rule 1925(a) Opinion.[6]

Appellant raises the following issue on appeal, which we have set forth *verbatim*:

> Whether the Lower Court erred when it refused to acquit Ms. Kurschinske of all counts under Rule 608. The document was not an unsworn document to be notarized, or relating to unsworn falsification to authorities, where no signature would be made subject to the penalties of 18 Pa.C.S. § 4904 there was no pursuant to a form bearing notice or authorized by law under such penalties. The only stoppage to the Lottery Compliance Specialist,

---

[6] Appellant's Rule 1925(b) "Concise Statements of Errors Complained of on Appeal" is 14 pages long and is nearly incomprehensible. The trial court heroically parsed out some of the issues before concluding none of them have merit. ***See*** Tr. Ct. Op, filed June 13, 2019.

was the business owners approval, once approved, the Compliance was completed and the store passed and the lottery compliance Mr. Donmoyor left. The name Amanda Hicks, was an additional name for contact purposes only to shift changes regardless of who printed her name for such purpose. The only person who could do legal relations under contract or have effect to his contract, was the business owner Jeff Clifton. Define "authorities"?

Appellant's Brief at 5.

Appellate briefs must conform materially to the requirements of the appellate rules and this Court may quash or dismiss an appeal if the defect in the brief is substantial. **Commonwealth v. Adams**, 882 A.2d 496, 497–98 (Pa. Super. 2005); Pa.R.A.P. 2101. This Court "will not act as counsel and will not develop arguments on behalf of an appellant. Moreover, when defects in a brief impede our ability to conduct meaningful appellate review, we may dismiss the appeal entirely or find certain issues to be waived." **Commonwealth v. Hardy**, 918 A.2d 766, 771 (Pa. Super. 2007) (citations omitted). "Although this Court is willing to construe liberally materials filed by a *pro se* litigant, a *pro se* appellant enjoys no special benefit." **Commonwealth v. Tchirkow**, 160 A.3d 798, 804 (Pa. Super. 2017). Accordingly, *pro se* litigants must comply with the procedural rules set forth in the Pennsylvania Rules of the Court. **Commonwealth v. Lyons**, 833 A.2d 245, 251–52 (Pa. Super. 2003).

Our rules of appellate procedure provide, *inter alia*, that the "statement of the questions involved must state concisely the issues to be resolved[.]" Pa.R.A.P. 2116(a). Our rules also provide that "[n]o question will be

considered unless it is stated in the statement of questions involved or is fairly suggested thereby." *Id*. *See also* Pa.R.A.P. 2117 (delineating briefing requirements for Statement of the Case); Rule 2119 (pertaining to division of argument into a many parts as there are questions to be argued). In addition, an appellant is required to provide a Statement of both the scope and standard of review that is relevant to the issues raised. Pa.R.A.P. 2111(a)(3).

Finally, issues that are not developed in the argument section of an appellate brief are waived. *Harkins v. Calumet Realty Co.*, 614 A.2d 699, 703 (Pa. Super. 1992). To properly develop an issue for our review, Appellant bears the burden of ensuring that his argument section includes citations to pertinent authorities as well as discussion and analysis of the authorities. *See* Pa.R.A.P. 2119; *Hardy*, 918 A.2d at 771 ("[I]t is an appellant's duty to present arguments that are sufficiently developed for our review. The brief must support the claims with pertinent discussion, with references to the record and with citations to legal authorities." (citations omitted)).

Here, Appellant failed to comply with the above rules of appellate procedure. The bulk of her 36-page brief is nearly-incomprehensible, raising issues not at all suggested by her Statement of the Question Involved, and not properly developed. In addition, she provides a scope and standard of review relevant to the review of suppression motion dispositions, an issue she does not mention in her Brief. We recognize that Appellant is not an attorney, however, she must still follow the rules of appellate procedure. As a result of

the significant briefing defects, we are unable to provide meaningful review of all but one of her issues. Thus, Appellant's challenge to a photo array, *see* Appellant's Brief at 12-13; her *Brady*[7] challenge, *id*. at 3, 17; her allegation of prosecutorial misconduct, *id*. at 14-15; her averment of violation of her 5th and 6th Amendment rights and her due process rights, *id*. at 18-19, 22; and her challenge to the jury instructions, *id.* at 28, are all waived.

In the actual argument section of her brief, *id*., at 34-37, Appellant essentially challenges the weight the jury gave to the evidence. This issue is, arguably, fairly suggested in the Statement of Question Presented. Appellant contends that her "un-refuted account" that her "act[] of filling out a in service [*sic*] questionnaire form was the product of a mistake and not the knowing and intentional act of seeking to deceive." *Id.* at 36 (unpaginated).[8] She claims that the evidence "is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances." *Id.* She asserts that "it is uncontroverted that the only evidence reflective of the state of mind of the accused was generated a whole year later by the prosecutor and his theatrics, who falsely led the [j]ury to believe there was no Jill that worked at Spanky's Tobacco, when there definitely was a Jill who team managed her own shift on Sunday and the states [*sic*] attorney using

---

[7] *Brady v. Maryland*, 373 U.S. 83 (1963).

[8] Appellant challenged the weight of the evidence in a Post-Sentence Motion.

harsh words." *Id.* at 37 (unpaginated). She concludes, therefore, that this Court should reverse her conviction of Unsworn Falsification to Authorities as "de [minimus] with confusion and mistakes while multitasking and juggling customers." *Id.*

When considering challenges to the weight of the evidence, we apply the following precepts. "The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none[,] or some of the evidence and to determine the credibility of the witnesses." *Commonwealth v. Talbert*, 129 A.3d 536, 545 (Pa. Super. 2015) (quotation marks and citation omitted). Resolving contradictory testimony and questions of credibility are matters for the finder of fact. *Commonwealth v. Hopkins*, 747 A.2d 910, 917 (Pa. Super. 2000). It is well-settled that we cannot substitute our judgment for that of the trier of fact. *Talbert*, *supra* at 546.

Moreover, appellate review of a weight claim is a review of the trial court's exercise of discretion in denying the weight challenge raised in the post-sentence motion; this court does not review the underlying question of whether the verdict is against the weight of the evidence. *See id.* at 545-46. "Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is [or is not] against the weight of the evidence." *Id.* at 546 (citation omitted). "One of the least assailable reasons

for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice." *Id.* (citation omitted).

Furthermore, "[i]n order for a defendant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague[,] and uncertain that the verdict shocks the conscience of the court." *Id.* (internal quotation marks and citation omitted). As our Supreme Court has made clear, reversal is only appropriate "where the facts and inferences disclose a palpable abuse of discretion[.]" ***Commonwealth v. Morales***, 91 A.3d 80, 91 (Pa. 2014) (citations and emphasis omitted).

"[A] true weight of the evidence challenge concedes that sufficient evidence exists to sustain the verdict but questions which evidence is to be believed." ***Commonwealth v. Thompson***, 106 A.3d 742, 758 (Pa. Super. 2014) (quotation marks and citation omitted). For that reason, the trial court need not view the evidence in the light most favorable to the verdict winner, and may instead use its discretion in concluding whether the verdict was against the weight of the evidence. ***Commonwealth v. Widmer***, 744 A.2d 745, 751 n.3 (Pa. 2000).

The jury chose to credit the testimony of Donmoyer over Appellant's testimony that her "act[] of filling out a in service [*sic*] questionnaire form was the product of a mistake and not the knowing and intentional act of seeking to deceive." Appellant's Brief at 36. Appellant essentially asks us to reassess

the credibility of Donmoyer and Appellant, and reweigh the testimony and evidence presented at trial. We cannot and will not do so. Our review of the record shows that, contrary to Appellant's claim, the evidence is not so tenuous, vague, or uncertain, and the verdict was not so contrary to the evidence as to shock the court's conscience. Accordingly, we discern no abuse of discretion in the trial court's denial of Appellant's weight claim.

Judgment of Sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/27/2019